No. 110,329

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EVERGREEN RECYCLE, L.L.C.,
*Appellee/Cross-appellant*,

v.

INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY,
*Appellant/Cross-appellee*,

v.

ECK AGENCY, INC.,
*Appellee/Cross-appellant*,

SYLLABUS BY THE COURT

1.

In an appeal from the district court's ruling on a summary judgment motion, an appellate court considers the motion de novo and applies the same standards by which district courts consider summary judgment motions.

2.

Under Kansas law, insurance companies have a duty to define any limitations on coverage in clear and explicit terms. Exceptions, limitations, and exclusions to insurance policies require a narrow construction.

3.

Forfeitures of insurance policies are disfavored in Kansas and should be permitted only when expressed in clear and unmistakable terms. An insurance company bears the

burden of proof on any affirmative defense asserted to avoid liability under an insurance policy.

4.

Under K.S.A. 40-2,120(b), an insurance company may rescind an insurance contract if an insured makes fraudulent material misrepresentations when applying for an insurance policy. Fraud is never presumed but must be shown by clear and convincing evidence.

5.

In order to establish fraudulent misrepresentation in an action to rescind an insurance contract, a party must establish:  (1) there was an untrue statement of fact made by the insured or an omission of material fact; (2) the insured knew the statement was untrue; (3) the insured made the statement with the intent to deceive or recklessly with disregard for the truth; (4) the insurer justifiably relied on the statement; and (5) the false statement actually contributed to the contingency or event on which the policy is to become due and payable.

6.

An exclusion under an insurance policy is an affirmative defense that must be specifically pleaded. Affirmative defenses not included in a responsive pleading are waived.

7.

A wrongdoer should not be allowed to recover insurance proceeds from a loss resulting from its own illegal acts. But when faced with a motion for partial summary judgment, the opposing party to the motion must first establish that there is a material fact linking the wrongdoer's illegal acts to the extent of the loss.

8.

An increase in hazard exclusion may bar recovery under an insurance policy if it can be shown that the insured changed the nature of its business or the use of its property which led to an increased hazard. But it is the insurer's burden to come forth with evidence to prove that defense in response to a summary judgment motion.

9.

In determining whether coverage is precluded under the insured's failure to provide prompt notice of loss, the insurer must also prove it suffered actual and substantial prejudice as a result of the delayed notice.

10.

Generally, an exclusion for neglect is based on a situation where the insured failed to exercise proper diligence at the time of or following a fire to save property from destruction.

11.

Under K.S.A. 2014 Supp. 60-256, a court may enter summary judgment in favor of the nonmoving party on its own motion where there remains no genuine issue as to any material fact in the record.

12.

Once an insurer has denied coverage, the insured has no obligation to continue to provide information to the insurance company.

3

13.

The affirmative defense of failure to cooperate requires proof that the insured had an unreasonable and willful pattern of refusing to answer material and relevant questions or supply material and relevant documents.

14.

An insurance policy is to be read in its entirety, construing its terms collectively in a way that gives effect to the intention of the parties. A court should not strain to find an ambiguity or make another contract for the parties; rather, it should enforce the contract as written.

15.

The obligation of an insurance company is governed by the provisions of the policy and its endorsements. Words used in an insurance policy are to be read and understood in their ordinary and usual meaning. An insurance company prepares its own policies and is responsible for any proper consequences of not making the policy clear and understandable. Where an ambiguity exists in the policy, the rules of construction favor the policyholder.

16.

Reformation is an equitable remedy which provides the court with a tool to reform a contract to express the true intention of the parties, but it is an extraordinary remedy and should be exercised only with great caution.

17.

Kansas courts have a reluctance to reform written contracts when there is no evidence of fraud, mistake, duress, undue influence, unconscionability, or evidence that the contract as written will cause harsh or unreasonable results. When reformation of a

policy is sought on the ground of mistake, and without fraud, it is necessary to establish mutuality of mistake by clear and convincing evidence.

18.

A definite agreement must have been reached to allow reformation of a contract. The courts should not reform a contract unless there was a prior agreement to which the contract as written can be reformed.

19.

Mutual mistake in a contract must be pleaded with particularity.

20.

In a case in which many of the relevant facts were established in summary judgment proceedings, it is appropriate for the district court to issue preliminary instructions to the jury before opening statements. If there is no objection to the district court's preliminary comments at trial, there should be no reversal unless the comments amount to clear error.

21.

Under K.S.A. 2014 Supp. 60-251(c), a party must object to the trial court's giving or failing to give a jury instruction before the jury retires. The party must state clearly what matter is objectionable and give the legal grounds for the objection. If there is no objection, the appellate court must limit review to a determination of whether the instruction was clearly erroneous and whether the error affects substantial rights.

22.

Review of a district court's ruling on a motion in limine is similar to that of a decision regarding an evidentiary ruling. Once the district court determines that the

evidence will be inadmissible at trial, the court also must find that a pretrial ruling is justified because the mere offer or mention of the evidence during trial may cause unfair prejudice, confuse the issues, or mislead the jury; the consideration of the issue during trial might unduly interrupt and delay the trial; or a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation.

23.

When the trial court grants a motion in limine to exclude evidence at trial, the party limited by the motion must make a sufficient proffer of the excluded evidence to preserve the issue for appeal. Without a proffer, the issue is not preserved for appeal.

24.

Citations to the record are vital when an appellant is complaining about specific rulings at trial regarding the admission of evidence. Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot 41) requires "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." Without proper citations to the record, the party has not met its burden to show reversible error.

Appeal from Sedgwick District Court; WILLIAM SIOUX WOOLLEY, judge. Opinion filed May 1, 2015. Affirmed in part and dismissed in part.

*Kevin M. McMaster* and *Jennifer M. Hill*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellant/cross-appellee.

*N. Russell Hazlewood* and *Jacob S. Graybill*, of Graybill & Hazlewood, LLC, of Wichita, for appellee/cross-appellant Evergreen Recycle, L.L.C.

*Gerald L. Green*, of Gilliland & Hayes, LLC, of Hutchinson, for appellee/cross-appellant Eck Agency, Inc.

6

Before HILL, P.J., MCANANY, J., and LARSON, S.J.

MCANANY, J.: Indiana Lumbermens Mutual Insurance Company (Lumbermens) appeals from the judgment awarded to Evergreen Pallet, L.L.C. and Evergreen Recycle, L.L.C. (Evergreen) in the amount of $231,000 based on Evergreen's claim that Lumbermens improperly failed to pay a claim for losses associated with a fire in a commercial mulch pile owned and maintained by Evergreen. On appeal, Lumbermens contends the district court erred in granting various motions for summary judgment, in interpreting the amount of coverage provided under the policy, and in various trial rulings.

Evergreen sued Lumbermens after Lumbermens refused to pay Evergreen's claim. Evergreen had purchased the insurance policy through its agent, Eck Agency, Inc. During discovery, Lumbermens asserted various affirmative defenses that it claimed excused its duty to pay for Evergreen's property loss.

Lumbermens filed a third-party petition against Eck Agency seeking indemnity in the event that Eck Agency was found to be Lumbermens' agent and if Lumbermens was found liable to Evergreen. After discovery and the pretrial conference, Eck Agency moved for summary judgment. The district court granted the motion and dismissed Eck Agency from the lawsuit.

Before trial, the district court ruled on 10 motions for summary judgment or motions for partial summary judgment. The district court granted multiple motions for partial summary judgment in favor of Evergreen, finding that Lumbermens had failed to present sufficient evidence of genuine issues of material fact on many of its affirmative defenses. Lumbermens twice moved for summary judgment, once shortly after the lawsuit was filed and again after the close of discovery.

The case proceeded to a jury trial on the sole issue of whether the notice requirement under the policy, *i.e.*, "prompt notice," was met by Evergreen. After a 13-day jury trial, the jury returned a verdict in Evergreen's favor for $235,000. After reducing the judgment by the deductible, the court entered judgment for Evergreen in the amount of $231,000.

Lumbermens appeals, asserting the various points of error broadly categorized above. After carefully reviewing each of Lumbermens' points of error, we affirm. Evergreen filed a cross-appeal, but our disposition of the issues raised by Lumbermens renders the cross-appeal moot.

FACTS

Jeff Ralls is the owner of Evergreen Pallet, L.L.C. and Evergreen Recycle, L.L.C. Ralls started in the pallet business in 2000, and Evergreen Pallet is in the business of manufacturing and refurbishing pallets. Third-party defendant Eck Agency assisted Evergreen in acquiring an insurance policy from Lumbermens.

In January 2008, Ralls acquired the business premises of a defunct recycling business. The prior owner of the recycling business had been previously shut down by the Kansas Department of Health and Environment (KDHE) for failing to maintain the site according to KDHE regulations. On those premises, Ralls began Evergreen Recycle. The business of Evergreen Recycle primarily involves turning wood waste into mulch and turning other organic waste into compost.

Due to the prior owner's violation of regulations, the KDHE met with Evergreen representatives soon after Ralls purchased the business. The KDHE identified specific problems and began working with Ralls to clean up the property and bring it within

8

compliance of the codes. The KDHE required that Evergreen post a bond, and the amount of the bond decreased over time as the facility came into compliance of the codes.

In a letter dated January 14, 2008, Sedgwick County Fire Marshal Tim Millspaugh informed Ralls of the fire codes applicable to the outside storage of combustible material as relevant to the mulch recycling business. The code limits the size of mulch piles to 25 feet in height, 150 feet in width, and 250 feet in length. Over 1 year later, in February 2009, Ralls was still working with the Fire Marshal to make improvements and achieve compliance with all of the fire codes.

In May 2008, Evergreen Recycle was added as an additional insured to Evergreen's policy with Lumbermens. At the time Evergreen Recycle was added to the policy, Ralls initially declined additional coverage for the mulch piles that were located on the property. Several months later, Cheri Ricke, working for Eck Agency, helped Ralls inquire about adding mulch coverage to the existing policy. Ralls reported to Ricke on the phone that there were four piles of mulch and assigned a value to each pile. In an August 21, 2008, email providing the information to Lumbermens' senior underwriter Nancy Curran, Ricke stated:

> "Insured has more mulch now [than] what he started with when first discussed. He has 4 piles at the 53rd St location about a 1/4 [mile] from the building and approx 30 yds apart except for biggest pile and it is farther from the others.
> "He would like you to quote:   #1  $70,000—10,000 cubic yd
>                                                      #2  $  7,000
>                                                      #3  $20,000
>                                                      #4  $20,000
> "Please let me know if we can do this and an annual premium."

Curran responded: "Using a $2 rate $117,000 = $2340 AP annually."

9

In September 2008, Lumbermens issued insurance on the mulch in the limits requested by Eck Agency with a $2,340 annual premium. The amounts representing the four piles were combined and added to the declarations sheet on the policy as "stock in open" for coverage in the combined amount of $117,000. The policy did not require Evergreen to keep the mulch in four separate piles.

During a KDHE inspection on February 12, 2009, employees of KDHE and Evergreen Recycling first discovered wisps of smoke coming from a small spot on the top of its shredded, dried mulch pile. Ralls thought at first that it was just a hot spot that could be easily extinguished. But after the employees dug into the pile, they determined it was bigger than originally thought and included tunnels of glowing material. Ralls called the fire department because he was concerned about the number of embers he was finding in the pile.

The fire department arrived and assisted Evergreen in its efforts to cool and extinguish the smoldering mulch. The mulch pile that caught fire was in violation of the size of piles allowed by the fire codes, which required that piles should not exceed 25 feet in height, 150 feet in width, and 250 feet in length. Ralls estimated the size of the mulch pile at the time the fire started at approximately 20 yards (60 feet) high, 100 yards (300 feet) wide, and 150 yards (450 feet) long. Ralls admitted the size of the pile was in violation of the fire code.

On the day the fire was discovered, Ralls called insurance agent Michael Eck, an employee of Eck Agency, to report the fire. Eck was at Evergreen's office picking up a check when he received Ralls' call. Eck could see the smoke and the fire trucks. Ralls was unsure if he wanted to make a claim for the fire loss at that time, and he did not believe he had to make an immediate decision on whether to file a claim.

10

The fire burned from February 12, 2009, until early March. The fire was deep inside the pile and apparently originated near the bottom of the pile of mulch. The fire department did not monitor the fire around the clock but instead devised a plan to help Evergreen fight the fire. The fire department allowed Ralls to monitor the fire overnight and returned as needed during daytime hours to put more water on the mulch pile. The fire department fought the fire by hauling water onto the hot spots and by putting a foam concentrate on the materials that allowed the water to soak into the wood.

Evergreen continued to disassemble the pile, soak the material with water as it was removed, place the wet material in windrows, resoak any smoldering material, and call the fire department for assistance if necessary. Evergreen rented water trucks so that it could continue to soak the pile of mulch as needed. Evergreen also rented a bulldozer and two four-wheel loaders to assist in its efforts to extinguish the fire. Evergreen employees drove over the pile with a bulldozer to compress the mulch and smother the fire. Evergreen employees and volunteers worked around the clock to soak and monitor the smoldering pile and the windrows. Fire Marshal Millspaugh testified that it appeared to him that Evergreen was making a good faith effort to extinguish the fire.

The KDHE inspectors made regular visits to the fire scene while the fire suppression effort was in progress. The inspectors prepared written reports describing the size of the pile and the efforts being made to suppress the fire. They took over 170 photographs during the course of the fire, memorializing the scene from the date when smoke was first discovered and ending when the fire was extinguished. Evergreen employees also took photographs and made video recordings of the mulch pile and the fire suppression activities.

On February 25, 2009, the large pile of mulch had been largely deconstructed and placed in windrows. The fire was mostly out, although there were "small smolders" in the

11

windrows for another 10 to 14 days. After the fire had been extinguished, selling the remaining windrowed mulch was not an option because it was charred, mixed with dirt, and smelled bad.

Also on February 25, 2009, a neighbor came to Evergreen and threatened to file a class action lawsuit. The man claimed he and others had incurred damages resulting from the smoke from the mulch fire. He complained that many of the homes in the area smelled like the smoke. Ralls reported the neighbor's complaint to Eck Agency, and Eck Agency immediately reported the threatened lawsuit to Lumbermens' claim department. Eck followed his telephone call with a letter dated March 10, 2009, in which he said that the insured had a mulch pile that caught fire due to internal combustion on February 12, 2009. In the letter, Eck provided the written details of the threatened lawsuit and the potential for a claim.

On March 11, 2009, Lumbermens' casualty claims manager, Geoff Lamb, began an investigation of Evergreen's mulch fire. Lamb assigned the investigation to Lisa Lillemoe. He instructed her to confirm the source of the mulch fire, interview Ralls, call the fire department, obtain a fire report, and interview KDHE Bureau of Air Director John Stark. Later that day, Lillemoe interviewed Stark, who witnessed the fire the day it was discovered, and he stated that it "was obvious that the fire was accidental."

According to Ralls, the residue of the fire, including a substantial amount of mulch that was charred by the fire and/or damaged by the water, was piled in windrows that remained on Evergreen's premises for more than a year after the fire was extinguished. During that time, Lumbermens never requested to inspect the scene of the fire or view the damaged property. In addition, Lumbermens never requested samples of the damaged material that remained after the fire.

12

At first, Ralls was unsure whether he wanted to make an insurance claim. Ralls testified that he was hesitant to make a claim because he did not want his premiums to rise or his policy to be canceled. Ricke, an employee of Eck agency, advised Ralls that his policy would probably be canceled if he chose to make a claim. Ralls eventually made the decision to file a claim because his losses were higher than anticipated. On March 20, 2009, Eck Agency faxed Lumbermens a form property loss notice for Evergreen's damaged stock, stating: "Combustion caused fire damaging mulch piles. Coverage listed as Stock in Open for $117,000."

On March 24, 2009, Lumbermens assigned the loss to its property claims adjuster, Randall Thompson. Thompson spoke to Ralls about the circumstances surrounding the fire. Ralls told Thompson that he had reported the fire to Eck Agency on the day that it started, and Michael Eck saw the fire on that date. Thompson noted that Eck had looked at the damage, and he stated he would follow up with Eck to discuss coverage issues, the extent of the damages, and to inquire about the delay in reporting the fire to Lumbermens. Thompson made an additional note memorializing that conversation that said: "The insured continued to move the pile around to help extinguish the fire and they continued to produce mulch and put on top of the pile." Evergreen denies that new mulch was added to the pile. Ralls reported the value of the mulch pile to be $240,000 with 50% of the pile destroyed. Thompson noted he was setting the reserve at the policy limit of $117,000.

On April 7, 2009, Ralls called Lumbermens to inquire about the status of Evergreen's claim. He was directed to Lamb, who requested that Ralls complete a worksheet. On the completed worksheet, Ralls claimed a loss of 60,000 cubic yards of mulch.

13

On April 13, 2009, Thompson called Ralls and asked for clarification as to how Ralls arrived at his values. Thompson noted in his claim log that Ralls would "gather his documentation and present" it to Thompson for review. Ralls followed up with Thompson by sending a schedule explaining Evergreen's calculation of the loss. After receiving Ralls' explanation, Thompson put the document in his claim file and made no further comment.

On April 29, 2009, Thompson took a recorded statement from Eck. Eck told Thompson that any delay in reporting the loss was due to the fact that Ralls did not know whether he wanted to make a claim for the loss. The next day, Thompson called Ralls and told him that Lumbermens was continuing its investigation. Thompson told Ralls that the delay was attributed in part due to Evergreen's delay in reporting the claim.

On May 6, 2009, Ralls called Lumbermens and was directed to Lumbermens' vice president of claims, Ray Campisi. Campisi told Ralls that Lumbermens had some difficulty with the claim and the delay in reporting. Ralls informed Campisi that part of the delay was due to the fact that he was busy putting out the fire and dealing with the follow-up activities. In addition, Ralls assumed that Eck Agency had reported the fire to Lumbermens. Campisi advised Ralls that this "information is contrary to what [Lumbermens] has been told up to this point." On May 8, 2009, Lumbermens sent a reservation of rights letter to Evergreen. The letter highlighted some of Lumbermens' concerns about the fire and about Evergreen's claim. Evergreen did not respond to the letter.

On May 26, 2009, Thompson advised Eck Agency and Evergreen that Lumbermens had decided to deny Evergreen's claim. In a May 27, 2009, letter explaining its decision to deny the claim, Lumbermens noted that it believed that Evergreen had breached the policy conditions. Lumbermens outlined four grounds for the denial: (1)

14

late notice; (2) failure to protect the property; (3) failure to exhibit damaged property; and (4) neglect. Thompson's letter concluded:

> "From the information provided to us [Lumbermens] was not advised of this loss until approximately six weeks after the loss occurred. The scene was altered and four separate mulch piles were combined into one unit prior to notice to [Lumbermens]. In addition, newly produced mulch was added to the burning pile prior to notice to [Lumbermens] which has destroyed [Lumbermens'] ability to investigate the cause of the loss or to determine the extent of the damages.
>
> "These findings indicate that this loss is not covered by the terms of the above mentioned policy as the policy conditions have been breached. Therefore, no payment will be made for this loss."

On May 27, 2009, Thompson spoke with Eck about the denial of the claim. Thompsons' notes from the call indicated that Eck "implied that we were declining [coverage] because of fraud and we were questioning his integrity. I advised that the reason for the denial was not for fraud but violation of policy conditions including late notice." Thompson also informed Eck that the denial was based in part on the inability to determine the extent of the loss. On that same date, Campisi spoke with Ralls. According to Campisi's notes, Ralls disagreed with Lumbermens' decision and wanted to debate his efforts to contain the fire. Campisi pointed to Ralls' failure to report the fire in a timely manner. Campisi stated: "I advised that if he was still in disagreement after discussing with his agent, he may wish to consult an attorney for direction."

On August 7, 2009, Evergreen filed suit against Lumbermens alleging breach of contract. Evergreen asserted that Lumbermens denied its claim for the loss of the mulch "without just cause or excuse." Evergreen requested judgment in the amount of $186,200, together with interest, and further demanded reasonable attorney fees under K.S.A. 40-

15

256. In response, Lumbermens denied that it breached or failed to comply with the terms of the insurance contract.

During discovery, Lumbermens asserted a number of affirmative defenses under the policy as defenses to Evergreen's breach of contract claim. Evergreen filed several motions for partial summary judgment based on each of the policy defenses asserted by Lumbermens. All of Lumbermens' affirmative defenses—other than its assertion that Evergreen failed to give prompt notice of loss—were dismissed prior to trial in a series of rulings on Evergreen's motions for partial summary judgment. In ruling on Evergreen's fifth motion for partial summary judgment, the district court also ruled that the policy limits available to Evergreen totaled $237,000, rather than the $117,000 previously thought, because the mulch was considered both "stock" and "stock in open." The policy had coverage limits for both "stock" and "stock in open."

During discovery, Evergreen asserted that it complied with the prompt notice of loss provision of the policy by informing Eck Agency about the loss on the day the fire started. In his deposition, Ralls testified that he thought giving notice to Eck Agency was sufficient to comply with the notice provision:

"Q. When is it you claim you gave notice of loss of this fire to Indiana
    Lumbermens?
"A. The day it happened.
"Q. How did you give notice of loss the day it happened?
"A. I called Michael Eck.
"Q. What did you tell him?
"A. I said we got a fire on the mulch pile. I thought I would let you know we are
    going to be here [awhile] and I will keep you updated on how things go.
"Q. Did you tell him to report it to the insurance company?
"A. I didn't think I had to. We have been dealing with him for years. I have had

16

multiple claims. It is the process we have taken many times when we have a claim. We call him, he takes care of it."

Evergreen's position that notice to Michael Eck was sufficient prompted Lumbermens to file a third-party petition to add Eck Agency as a third-party defendant. Lumbermens contended that Eck Agency breached its brokerage agreement with Lumbermens, which precluded Eck Agency from accepting Evergreen's notice of the fire loss as binding notice on Lumbermens. Eck Agency moved for summary judgment on March 28, 2012. The district court granted Eck Agency's motion on May 15, 2013.

The case proceeded to trial on March 5, 2013. But after voir dire and opening statements, both parties moved for a mistrial. Evergreen argued that Lumbermens violated the motion in limine and "injected legal issues that have been decided by the Court" in its ruling on the summary judgment motions. After an extensive conference with counsel, the court declared a mistrial. In its ruling, the court noted that multiple orders were outstanding on the various dispositive motions the parties had filed leading up to trial. The court entered six journal entries on the dispositive motions between April 8, 2013, and April 29, 2013.

In April 2013, the sole issue of whether Evergreen provided prompt notice of loss was tried to a jury. After a 13-day trial, the jury found that Evergreen provided Lumbermens with prompt notice of loss. The jury determined that Evergreen had suffered damages of $180,000 for mulch loss; $50,000 for debris removal; and $5,000 for emergency removal expense. Total damages equaled $235,000. After applying the $4,000 deductible, the court entered judgment for Evergreen in the amount of $231,000.

Lumbermens appealed from the judgment. Evergreen filed a cross-appeal.

17

Lumbermens first challenges several of the district court's rulings raised in the various summary judgment motions. In our de novo review of the rulings on the motions for summary judgment, we apply the same summary judgment standards as did the district court. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011). Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the summary judgment was sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. We must deny the motion if reasonable minds could differ as to the conclusions drawn from the evidence. See *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

In reviewing the issues regarding Lumbermens' claim that exclusions to the policy rendered the coverage void, we keep in mind that under Kansas law, exclusions to insurance policies are construed narrowly. This court has stated:

18

"'It is the general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.' *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 149, 519 P.2d 737 (1974). The exclusion must be given its plain, ordinary meaning. *Central Security Mut. Ins. Co v. DePinto*, 235 Kan. 331, 333, 681 P.2d 15 (1984)." *Pink Cadillac Bar & Grill, Inc. v. USF & G Co.*, 22 Kan. App. 2d 944, 952, 925 P.2d 452 (1996), *rev. denied* 261 Kan. 1086 (1997).

A. *Material misrepresentations exclusion*

Lumbermens raised various affirmative defenses in its answer to Evergreen's claim that Lumbermens should pay for damages resulting from the mulch pile. One of those defenses was that the insurance policy was void because Kansas law precludes coverage when an insured misrepresents material issues when obtaining coverage. See K.S.A. 40-2,120(b) (policy of property or casualty insurance may be canceled if the policy was issued because of a material misrepresentation). In a motion for partial summary judgment, Evergreen sought a dismissal of Lumbermens' affirmative defense that coverage had been voided by Evergreen's fraud or misrepresentations in obtaining coverage.

An insurance company may rescind an insurance contract if an insured makes fraudulent material misrepresentations when applying for an insurance policy. *Chism v. Protective Life Ins. Co.*, 290 Kan. 645, 654, 234 P.3d 780 (2010); *American States Ins. Co. v. Ehrlich*, 237 Kan. 449, 452, 701 P.2d 676 (1985). The assertion of a condition as a reason to avoid liability under an insurance policy is an affirmative defense upon which Lumbermens bears the burden of proof. *Krug v. Millers' Mutual Insurance Ass'n.*, 209 Kan. 111, 117-18, 495 P.2d 949 (1972). Fraud is never presumed but must be shown by clear and convincing evidence. The same standard applies for proving that insurance

19

coverage is void by an applicant's willful misrepresentation. *Chism*, 290 Kan. at 654. See *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 919, 109 Cal. Rptr. 473, 513 P.2d 353 (1973). Forfeitures of insurance policies are disfavored in Kansas and should be permitted only when expressed in clear and unmistakable terms. *National Union Fire Ins. Co. v. FDIC*, 264 Kan. 733, 745, 957 P.2d 357 (1998) (citing *Estate of Bingham v. Nationwide Life Ins. Co.,* 7 Kan. App. 2d 72, 638 P.2d 352 [1981], *aff'd as modified* 231 Kan. 389, 646 P.2d 1048 [1982]); see *Insurance Co. v. Milling Co.*, 69 Kan. 114, Syl. ¶ 2, 76 Pac. 423 (1904).

In order to establish fraudulent misrepresentation in an action to rescind an insurance contract, a party must establish the following elements:

"(1) There was an untrue statement of fact made by the insured or an omission of material fact, (2) the insured knew the statement was untrue, (3) the insured made the statement with the intent to deceive or recklessly with disregard for the truth, (4) the insurer justifiably relied on the statement, and (5) the false statement actually contributed to the contingency or event on which the policy is to become due and payable. [Citations omitted.]" *Chism*, 290 Kan. at 654.

Lumbermens points to K.S.A. 40-2,120(b) in support of its position that a policy of property or casualty insurance may be canceled if the policy was issued based on a material misrepresentation. In order to successfully defend on a claim of material misrepresentation as provided for in the policy, Lumbermens would have to establish that Evergreen willfully concealed or misrepresented a material fact in procuring the coverage. Here, the policy contains an amendatory endorsement concerning misrepresentation, concealment, or fraud. It states:

"'We' do not cover a loss if 'you['] or any other insured has:
"a.  willfully concealed or misrepresented:

20

"(1) a material fact or circumstance that relates to this insurance or the subject thereof; or

"(2) 'your' interest therein; or

"b. engaged in fraudulent conduct or sworn falsely with regard to a matter that relates to this insurance or the subject thereof."

A willful act is one performed with a designed purpose or intent on the part of the person to do wrong or to cause injury to another. *Beckman v. Kansas Dept. of Human Resources*, 30 Kan. App. 2d 606, 612, 43 P.3d 891 (2002). A misrepresentation is material only if it can be shown that knowledge of the truth would have reasonably influenced the insurer in accepting the risk or fixing the premium. *American State Ins. Co. v. Ehrlich*, 237 Kan. 449, 453, 701 P.2d 676 (1985).

In ruling on Evergreen's motion for summary judgment, the district court accepted as uncontroverted the following fact: "Evergreen did not willfully conceal or misrepresent any material fact or circumstance in connection with obtaining coverage under the subject policy." During discovery, Thompson was designated as Lumbermens' corporate representative to testify on its behalf at depositions scheduled by Evergreen with respect to "matters known or reasonably available to the organization." K.S.A. 60-230(b)(5). Thompson testified that based on the present information, Lumbermens was no longer claiming that coverage was void due to misrepresentations allegedly made by Evergreen in obtaining coverage. He testified:

"Q. Paragraph 16 [of Lumbermens' amended answer] says [Lumbermens] asserts that the coverage for the mulch piles may be void by reason of misrepresentations made by [Evergreen] and their agents in obtaining coverage. What are you claiming? Are you claiming that it is void or not?

"A. I think the response would probably be it may be void.

21

"Q. Are you claiming it is void or aren't you? You have to make up your mind sometime. Are you claiming today it is void?

"A. Based on information I have today, I am not claiming it is void, no.

"Q. Those misrepresentations include size, value and separation of piles. What are you claiming in that regard?

"A. We will rely on counsel for those responses to those defenses. We asked counsel to prepare them."

The district court found significance in Thompson's inability to provide a responsive answer to Evergreen's request for clarification as to what Lumbermens was claiming to support its affirmative defense of misrepresentation. Given the de novo standard of review, the district court's reasoning does not bind this court. Our role is simply to reexamine the motion and the uncontroverted facts to determine for ourselves whether the moving party has established that there remains no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Evergreen's second motion for partial summary judgment was accompanied by Ralls' sworn declaration that Evergreen had not willfully concealed or misrepresented any material fact in obtaining coverage. As such, under Supreme Court Rule 141 (2014 Kan. Ct. R. Annot. 257), Lumbermens was obligated to come forward with evidence to demonstrate it could meet its burden of establishing a willful misrepresentation of material fact. Instead, Lumbermens answered by stating: "This statement by Jeff Ralls, owner of the Plaintiff, in his self serving declaration, sets out a legal conclusion and not a statement of fact. Consequently, it is not admissible into evidence and cannot be considered in connection with the Plaintiff's Second Motion for Partial Summary Judgment." (A rather curious contention: that a litigant cannot testify to not having obtained coverage through fraud or deception.) Later in its assertion of uncontroverted facts, Lumbermens points to its answer that Evergreen misrepresented facts to obtain insurance coverage. But nowhere in the response to Evergreen's motion for partial

22

summary judgment does Lumbermens provide any facts to support the elements that it would need to support its claim of misrepresentation in obtaining coverage. Our review of the record shows that Lumbermens failed to provide evidence to establish that misrepresentation in obtaining the insurance policy was a contested issue.

On appeal, Lumbermens asserts that the "facts related to misrepresentations in obtaining coverage are simple." Lumbermens points to facts it alleges were misrepresented or not disclosed by Ralls at the time the application for insurance was submitted: (1) the mulch pile was much larger than represented; (2) there was only one pile rather than four separate piles; (3) the size of the pile violated the fire code; (4) the KDHE ordered Evergreen to reduce the size of the pile; (5) Evergreen was running a compost facility; and (5) prior to Ralls' ownership, the recycling business was previously shut down by the KDHE. But these factual contentions are not keyed to Evergreen's statement of uncontroverted facts. On appeal, Lumbermens now claims that Evergreen allowed Lumbermens to believe the story that it had four piles rather than one pile in order to obtain insurance under false pretenses. But Lumbermens provides no evidence to support its theory or to support the fact that the number of piles was a factor in Lumbermens' decision to provide the coverage.

In his deposition, Thompson also confirmed that he had no evidence to prove Lumbermens would not have issued the policy if Evergreen had not misrepresented information in its request for insurance. He testified:

"Q. Did somebody tell you they wouldn't have written this policy?
"A. No one has told me they would not have written the policy.
"Q. Okay.
"A. But those are factors that are considered when they do write a policy.
"Q. Nobody that you are aware of has said if we had known X, Y, and Z we wouldn't have written this risk, is that accurate?

23

"A. I have not had those conversations with anyone. They may have happened internally, but I don't know about those."

As Thompson's testimony indicates, Lumbermens did not produce evidence that it would not have issued the policy but for Evergreen's alleged misrepresentations.

Lumbermens now claims that it relied on Evergreen's representations that it had four piles of mulch, in reasonable sizes, and needed coverage for those four piles. Lumbermens further claims that all of the elements of misrepresentation have been met. However, Lumbermens did not respond to Evergreen's motion for summary judgment with evidence to demonstrate it could meet its burden of establishing a willful misrepresentation of material fact.

As an uncontroverted fact, Evergreen asserted that it had not willfully concealed or misrepresented any material fact in obtaining coverage. In its response, Lumbermens failed to refute Evergreen's assertion with evidence supporting its theory that Evergreen misrepresented material facts to obtain insurance coverage. Lumbermens responded to Evergreen's motion for partial summary judgment with objections rather than providing evidence to create a disputed material fact. As such, the district court properly granted summary judgment to Evergreen.

B. *Illegal acts exclusion*

Second, Lumbermens asserts that the district court erred in denying its motion for summary judgment based on the illegal acts exclusion. Lumbermens requested judgment in its favor based on the theory that illegal acts committed by Evergreen caused or increased the fire loss.

24

The policy issued by Lumbermens excluded coverage for loss caused by or resulting from illegal acts. Under perils excluded, the policy provided:

"e. **Criminal, Fraudulent, or Dishonest Acts** – 'We' do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:
"(1) 'you';
"(2) others who have an interest in the property;
"(3) others to whom 'you' entrust the property;
"(4) 'your' partners, officers, directors, trustees, joint adventurers; or
"(5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work."

Lumbermens moved for summary judgment based on the illegal acts exclusion. Lumbermens argued that "it is clear that the fire in the mulch pile occurred because of the actions of Evergreen Recycle in intentionally creating a pile of mulch that they knew would smolder, burn or otherwise degrade." Lumbermens pointed to the fact that the size of the mulch pile was in violation of the fire codes and further claimed that it is undisputed "that the fire in the mulch pile was caused because of its size and failure to monitor the internal temperature (spontaneous combustion)."

The district court denied Lumbermens' motion in part, noting that there was a question of fact regarding the cause of the fire; therefore Lumbermens' request for summary judgment could not be granted based on the illegal acts exclusion.

At the time the district court heard Lumbermens' first motion for summary judgment, Lumbermens had not pleaded an affirmative defense based on the illegal acts exclusion. An exclusion under an insurance policy is an affirmative defense that must be specifically pleaded. K.S.A. 2014 Supp. 60-208(c); *Gifford v. Farm Bur. Mut. Ins. Co.*,

25

14 Kan. App. 2d 740, 746, 799 P.2d 105, *rev. denied* 248 Kan. 995 (1990). Affirmative defenses not included in a responsive pleading are waived. *Turon State Bank v. Bozarth*, 235 Kan. 786, Syl. ¶ 1, 684 P.2d 419 (1984). In its response to Lumbermens' motion for summary judgment, Evergreen objected on the basis that Lumbermens had not yet pled illegal acts as an affirmative defense. The district court could have denied Lumbermens' motion on the fact that the affirmative defense had not yet been pled, but the court additionally noted that there was still a factual dispute as to the cause of the fire.

Later, Evergreen filed its third motion for partial summary judgment, seeking dismissal of Lumbermens' affirmative defense that coverage had been voided because the loss was caused by or resulted from "dishonest, fraudulent, or illegal acts committed by Evergreen alone or in collusion with another." At this point in time, Lumbermens had specifically asserted the affirmative defense of the illegal acts exclusion in an amended answer. Evergreen claimed that summary judgment was proper because Lumbermens was unable to provide evidence establishing a genuine issue of material fact that Evergreen's illegal acts caused the loss.

Lumbermens contends that coverage should be excluded if it is able to show that the loss resulted from illegal acts. Lumbermens asserts that public policy does not support finding coverage for the mulch pile because Evergreen's actions led to the loss. Lumbermens asserts that a wrongdoer should not be allowed to recover from a loss resulting from its own acts. See *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 84, 483 P.2d 1072 (1971) (Fontron, dissenting). The assertion of a condition as a ground to avoid liability under an insurance policy is an affirmative defense upon which Lumbermens bears the burden of proof. *Krug*, 209 Kan. at 117-18.

In granting Evergreen's motion for partial summary judgment, the district court first found that Thompson, as Lumbermens' corporate designee under K.S.A. 2014 Supp.

60-230(b)(6), failed to answer questions about the affirmative defense of illegal acts. In his deposition, Thompson confirmed that he had no evidence supporting Lumbermens' assertion that the illegal acts exclusion applied. Thompson indicated that Lumbermens did not know how large the mulch piles were or whether the size of the mulch piles contributed to the loss. Additionally, he testified:

"Q. What fact or facts does [Lumbermens] rely upon to prove that but for the illegal act the loss would not have occurred?
  "MR. MCMASTER: To which we object. Calls for privileged information. You can answer with regards to everything you know other than what counsel has told you.
"Q. I'm entitled to know everything that you are going to come to court and try to prove.
"A. We will leave those decisions up to counsel. I mean, we're not—
"Q. Are you refusing to answer my question?
"A. What I'm telling you is based on what I know, those decisions will be made by counsel. I don't know the answers to those questions."

As Thompson's testimony indicates, Lumbermens did not produce evidence linking the alleged illegal acts to the actual loss incurred. The district court ruled that Lumbermens would need an expert witness to testify as to causation. The court stated:

"Discovery is the time to find out the facts. Summary judgment is the time by which the parties are expected to have expert testimony to support their claims of causation and damages. The Court notes [Lumbermens'] argument that [Evergreen] did not keep the pile intact so [Lumbermens] could have an opportunity to evaluate the pile.
"However, the Court agrees with [Evergreen's] arguments that [Lumbermens] did not even try to investigate the loss. [Lumbermens] had plenty of facts upon which an expert could draw conclusions. The facts and arguments [Lumbermens] has offered in response to [Evergreen's] summary judgment motion might support an expert opinion, but they are no substitute for an expert opinion.

27

"The issues of pile size and limited access are more problematic for [Evergreen]. It took weeks to get the fire under control, and it seems obvious that the size of, or lack of access to, the pile would increase the loss. However, the Court again agrees with [Evergreen] that an expert would be required to state that but for these illegal acts the loss would be less. That's what needs to be proven for purposes of the affirmative defense."

Kansas has not established a test to determine under what circumstances the illegal acts exclusion applies to exclude coverage under a policy. However, the Kansas courts have applied a "natural and probable consequences" test to the intentional acts exclusion under insurance policies. "'Where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional.' [Citation omitted.]" *State Farm Fire & Cas. Co. v. Falley*, 23 Kan. App. 2d 21, 25, 926 P.2d 664 (1996). In *Falley*, this court examined whether the intentional acts exclusion applied to exclude coverage when the insured intentionally drove his car with a man on the hood of the car. After examining the summary judgment motion and response, the court found a genuine material issue of fact remained as to whether the intentional act of driving with the injured party on the hood caused the injuries. As such, the entry of summary judgment was in error.

The *Falley* court cited *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973). In *Spruill Motors*, the court focused on the issue of causation in determining whether the intentional acts exclusion should preclude coverage after a customer was injured when he tried to stop two employees of a mechanic's garage from towing his truck. 212 Kan. at 682. The insurance company claimed that the intentional acts exclusion applied to exclude coverage of the claim because the employees' act of taking the truck was wrongful and intentional. Our Supreme Court found that the intentional act of taking the truck was not the act that caused the personal injury; rather the injury was caused by the manner in which the employees were moving the truck. 212 Kan. at 687. The Supreme Court concluded: "Since the undisputed facts

28

disclose the personal injury to [the customer] was not the intended result of Spruill's acts, the policy of insurance covered Spruill for [the customer's] personal injury." 212 Kan. at 687. The court held that the policy covered an unintended injury resulting from an intentional act. 212 Kan. at 687.

It is likely that the Kansas courts would employ the "natural and probable consequences" test in evaluating whether Evergreen's intentional acts caused the loss in this case. But we must first find a genuine issue of material fact linking Evergreen's intentional acts to the extent of the loss.

As we examine the motion for partial summary judgment and Lumbermens' response, we accept as true the facts that the mulch pile exceeded the maximum size permitted by the fire codes and that Evergreen failed to comply with the fire codes by monitoring the internal temperature of the pile. But Lumbermens failed to come forward with any evidence supporting its position that the illegal acts caused or increased the loss. There was sufficient evidence presented that Evergreen was in violation of KDHE regulations and state fire codes. However, Lumbermens failed to present evidence linking the cause of the loss to the illegal acts.

Lumbermens argues that it is uncontroverted that the illegal acts caused the loss. Lumbermens points to Fire Marshal Millspaugh's affidavit indicating that the lack of access to the mulch pile increased the amount of damage. However, Millspaugh stated that he was "not contending that if the pile had been smaller a spontaneous combustion fire could not have started," and he was also "not contending that the fire department was unable to address the fire because it was unable to get access to it."

In the present case, Lumbermens was charged with the burden of showing that the illegal acts caused the loss in order to exclude coverage under the illegal acts exclusion.

29

Lumbermens presented evidence that Lumbermens committed illegal acts by violating various KDHE regulations and fire codes. But in Lumbermens' response to the motion for partial summary judgment, Evergreen failed to provide an expert or point to evidence in the record supporting its position that those illegal acts caused or increased the loss. Once a summary judgment motion is filed, the opposing party with the burden of proof must respond with evidence and facts to support its claim. *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, 555-56, 205 P.3d 1245 (2009).

As an uncontroverted fact, Evergreen asserted that there is no evidence that the loss was caused by an illegal act committed by Evergreen. In response, Lumbermens failed to refute Evergreen's assertion with evidence supporting its theory that the illegal acts led to the fire loss. As such, the district court properly granted summary judgment to Evergreen on its third motion for partial summary judgment.

C. *Increased hazard exclusion*

Third, Lumbermens asserts that the district court erred in granting summary judgment to Evergreen and thereby dismissing Lumbermens' affirmative defense that coverage was precluded under the increased hazard exclusion of the insurance policy.

The policy issued by Lumbermens excluded coverage for loss occurring while a hazard has been materially increased by means under the policyholder's knowledge or control. The increased hazard exclusion in the policy provides: "i. **Increased hazard—** 'We' do not pay for loss occurring while the hazard has been materially increased by any means within 'your' knowledge or 'your' control."

In its fourth motion for partial summary judgment, Evergreen sought a dismissal of Lumbermens' affirmative defense that coverage had been voided because the loss

30

occurred when there was an increased hazard which was within Evergreen's knowledge or control. Lumbermens' specific claim was based on its assertion that Evergreen added new mulch to the pile after the fire was in progress. Evergreen claimed that summary judgment was proper because Lumbermens did not have evidence to support its claim that Evergreen added to the mulch pile.

In granting Evergreen's motion for partial summary judgment, the district court found that Lumbermens:  (1) failed to plead this affirmative defense; (2) limited its proof of a material increase in hazard to an unsupportable claim that new mulch had been added to the burning pile; and (3) admitted it had no evidence to support its assertion. Alternatively, the district court found that Lumbermens failed to meet its burden of showing that Evergreen substantially increased the hazard beyond the risk contemplated by the underwriters at the time Lumbermens last renewed the policy.

K.S.A. 2014 Supp. 40-2404(9)(d) prohibits an insurer from "refusing to pay claims without conducting a reasonable investigation based upon all available information." K.S.A. 40-2404(9)(n) requires an insurer to "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." Lumbermens did not raise the increased hazard defense as a basis for denying coverage to Evergreen in its declination letter. In addition, Lumbermens did not raise this defense in its initial answer to the lawsuit. Lumbermens finally asserted this affirmative defense in its amended answer.

An increase in hazard exclusion may bar recovery under an insurance policy.

"While it has been considered that fire insurance policies contain an implied promise or undertaking on the part of the insured that he or she will not change the premises or the character of the business carried on there so as to increase the risk of loss by fire, such

31

policies usually contain specific provisions against an increase of risk or hazard, sometimes qualified by the clause, 'within the control or knowledge of the insured.' Such a provision is valid and enforceable and must be given a reasonable construction.

> . . . .

"In order to bar recovery under a fire insurance policy, an 'increase in hazard' need not cause actual loss. However, an act or change that avoids insurance coverage due to an increase of hazard contemplates that the alteration is material and substantial as would be viewed by a person of ordinary intelligence, care, and diligence." 44 Am. Jur. 2d Insurance § 1190.

Kansas courts do not appear to have interpreted what is required before an insurance company is allowed to apply the exclusion for increased hazard. In *Triple-X Chemical Laboratories v. Great American Ins. Co.*, 54 Ill. App. 3d 676, 370 N.E.2d 70 (1977), the Appellate Court of Illinois construed an increase in hazard provision. In that case, an insurance company denied coverage to Triple-X Laboratories on its claim for losses resulting from two fires which occurred several weeks apart. Following a fire on August 18, 1972, the fire marshal informed Triple-X that it was in violation of the fire code because all of its electric motors were not of the explosion-proof type. The fire marshal ordered compliance within 30 days. On September 7, 1972, a second fire occurred which was caused by Triple-X's continued use of the nonexplosion-proof machine to fill containers with stove polish.

The insurance company asserted affirmative defenses to the plaintiff's claim arising out of the second fire, asserting that plaintiff increased the hazard and neglected to use all reasonable means to save and preserve the property after the loss. The Appellate Court of Illinois stated that even accepting the defendant's allegations as true,

"they do not substantiate defendant's defense of increase of hazard. In the absence of fraud or deceit, which are not alleged here, an insurer is deemed to insure against the

32

risks inherent in the business of the insured at the time the policy is issued. [Citation omitted.] In determining the nature and extent of the risks insured against, the insurer is bound by what it knows or should have known concerning the normal and customary hazards inherent in the insured's business. [Citations omitted.] If the insurer does not intend to insure against a risk which is necessarily incident to the business of the insured, it should specifically exclude such risk from the coverage of the policy. [Citation omitted.]" 54 Ill. App. 3d at 679.

In *Triple-X*, the insurer knew that both explosion-proof and nonexplosion-proof machines were used at Triple-X, and a routine inspection of the premises would have revealed that flammable substances were stored in close proximity to the nonexplosion proof machines.

"Since an increase in hazard clause is for the benefit of the insurer, a company which knows or ought to know of facts which would entitle it to take advantage of the clause should not be permitted thereafter to retain the insured's premium and treat the policy as if in full force until a loss occurs and then for the first time seek to secure a forfeiture. [Citation omitted.]" 54 Ill. App. 3d at 680.

See *Imperial Ins. Co. v. National Homes Acceptance Corp.*, 626 S.W.2d 327 (Tex. App. 1981) (the determination of whether there has been an increase in hazard should be made from the point in time the policy was issued); *Simmons v. Home Ins. Co.*, 235 Ill. App. 344 (1925) (use of gasoline generator on premises to generate electricity for lighting did not trigger increased hazard exclusion); *Hartford Fire Ins. Co v. Chenault*, 126 S.W. 1098 (Ky. App. 1910) (insurer cannot insure property with no limitation on its use and then complain that the hazard is increased when it is used for another purpose).

In this case, Lumbermens initially failed to point to an increased hazard as a reason for denying coverage. In Thompson's first K.S.A. 60-230(b)(5) deposition, he testified that all of Lumbermens' reasons for denying coverage were set out in the

33

declination letter. No mention of an increased hazard was made in the declination letter. In contrast, during his second K.S.A. 60-230(b)(5) deposition Thompson alleged that the hazard was increased when Evergreen added to the mulch pile after the pile had started to burn. He testified:

> "Q. Are you prepared to testify as to the facts that [Lumbermens] relies on to support that allegation?
> "A. One of the increased hazards would be the addition of the mulch to the mulch pile.
> "Q. You are talking about putting new mulch on the burning mulch?
> "A. Yes.
> . . . .
> "Q. Now I am asking you is there anything else. One at a time. Anything else?
> "A. As I sit here right now, that is the increased hazard exposure that I see. There may be others.
> "Q. But you are not prepared to tell me what they are as you sit here today?
> "A. No."

As noted by Evergreen, in responding to the motion for partial summary judgment, Lumbermens failed to identify a witness to testify that new mulch was added to the pile of burning mulch, nor was there evidence presented to substantiate that theory. The record does not contain evidence to support Lumbermens' theory of an increased hazard.

Lumbermens relied solely on its own allegation that Evergreen added to the pile after the fire started in its claim of increased hazard, but it came forth with no evidence to support its assertion. Lumbermens asserted the increased hazard exclusion as an affirmative defense, and it had the burden of coming forth with evidence to prove that defense in its response to the summary judgment motion. See *U.S.D. 232*, 288 Kan. at 555-56. Ralls submitted an affidavit in which he claimed that mulch was not added to the

34

pile after the fire was discovered. Lumbermens did not submit any evidence refuting this claim.

On appeal, Lumbermens once again asserts that the size of the mulch pile restricted the firefighters' access to the fire and therefore increased the hazard. But Lumbermens relies solely on conclusory statements in Millspaugh's and Raymond Hensley's affidavits and ignores contradictory testimony in their subsequent depositions. In addition, Lumbermens never offered expert testimony that the hazard was increased for any reason. Millspaugh testified that even though the code required a pile to be monitored by "approved means," the code failed to specify any approved means, and Evergreen could not have been cited for its failure to comply with that provision.

Lumbermens failed to show that Evergreen changed the nature of its business or the use of its property which led to an increased hazard. Lumbermens complains about four additional issues that it states were within Evergreen's control:  (1) combining the four piles into one; (2) failing to turn the pile to reduce the risk of spontaneous combustion; (3) failing to monitor the internal temperature of the pile; and (4) failing to maintain access to the piles to increase the ability to fight the fire. But in its response to Evergreen's summary judgment motion, Lumbermens did not point to evidence in the record or provide affidavits from experts in support of its theories of an increased hazard. Additionally, Lumbermens cannot show that any of these issues increased from the point in time that Evergreen renewed the policy; rather, they were merely a continuation of Evergreen's stated business practice of manufacturing and storing mulch. Although it can be argued that Evergreen was negligent in those four areas, public policy dictates that exclusions to coverage should be narrowly construed. See *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, Syl. ¶ 13, 73 P.3d 120 (2003).

35

All of the issues that Lumbermens now points to it knew or should have known at the time the policy renewed on November 24, 2008. At that time, the four piles of mulch had grown into one large, single pile. The insurance policy did not contain any restrictions or exclusions as to mulch piles or spacing. The clear language of the increased hazard exclusion in the policy excludes coverage for "loss occurring while the hazard has been materially increased by any means within 'your' knowledge or 'your' control." There is no evidence of a change in Evergreen's business practices after the policy renewed.

Once a summary judgment motion is filed, the opposing party with the burden of proof must respond with evidence and facts to support its claim. *U.S.D. 232*, 288 Kan. at 555-56. Lumbermens did not set forth any evidence in its response to Evergreen's motion for summary judgment to support its theory that coverage should be excluded based on an increased hazard. As such, the district court properly granted summary judgment to Evergreen on its fourth motion for partial summary judgment.

D. *Exclusion based on misrepresentations about the loss and claim*

Lumbermens argues that the district court erred in granting summary judgment to Evergreen and thereby dismissing Lumbermens' affirmative defense based on its claim that Evergreen made misrepresentations about the loss and claim.

In its sixth motion for partial summary judgment, Evergreen sought a dismissal of Lumbermens' affirmative defense that coverage had been voided by Evergreen's failure to: (1) comply with terms and conditions of the policy; (2) fulfill conditions precedent; (3) cooperate; and (4) provide Lumbermens with complete, accurate, and adequate information about the fire and loss. Evergreen claimed that summary judgment was proper because there was no evidence that it failed to comply in any material respect with

36

regards to any terms and conditions of the policy. Evergreen denied that it made misrepresentations about the loss and claim.

This court is unable to review this issue on appeal because Lumbermens' response to Evergreen's sixth motion for partial summary judgment is not included in the record on appeal. Apparently, a response was filed but not included in the record on appeal. Evergreen characterizes Lumbermens' response as "a broad, nonspecific reference to its prior filings and an unabridged quotation of its verbose (10 page) pretrial order contentions."

The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013). In its brief, Lumbermens points to evidence that it believes supports its position that Evergreen made misrepresentations about the loss and claim. But Lumbermens provides no record cites to the facts it claims supports its position, and we are unable to review its response to Evergreen's sixth motion for partial summary judgment because it is not included in the record on appeal. Without such a record, it is impossible for us to conduct a de novo review of whether Lumbermens was able to establish a genuine issue of material fact on its claim that Evergreen made misrepresentations about the loss and claim.

 E. *Failure to provide prompt notice of loss*

Lumbermens asserts that the district court erred in denying summary judgment on its claim that Evergreen failed to provide Lumbermens with prompt notice of loss. It was Lumbermens' burden to prove that this exclusionary provision applied to preclude coverage. *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 906, 89 P.3d 536 (2004).

37

The insurance policy required "prompt" notice of loss by the insured to Lumbermens in the event of a loss. The word "prompt" is not defined by the terms of the policy. The policy provides:

"**WHAT MUST BE DONE IN CASE OF LOSS**
"1. **Notice** - In case of a loss, 'you' must:
    "a. give 'us' or 'our' agent prompt notice including a description of the property involved ('we' may request written notice)."

In its response to Lumbermens' motion for summary judgment, Evergreen pointed to facts indicating that Lumbermens had been given oral and written notice of the loss prior to the date of the actual claim. Ralls testified that he gave notice of the fire to Eck Agency on the day it was discovered, and in the past this type of notice had been sufficient to satisfy the prompt notice of loss clause. Evergreen also asserted that Lumbermens failed to show it suffered actual and substantial prejudice as a result of the alleged untimely notice. See *National Union Fire Ins. Co. v. FDIC*, 264 Kan. 733, 751, 957 P.2d 357 (1998) ("[A]n insurer must prove prejudice before denying coverage based on a later filing of proof of loss."); *Creek v. Harder Constr.*, 25 Kan. App. 2d 232, 237, 961 P.2d 1240 (1998) (insurance company must prove prejudice in order to escape liability based on a claim that the insured failed to comply with the notice requirements). Generally, policy provisions dealing with the notice of claim or occurrence should be liberally construed in favor of the insured. See *National Union*, 264 Kan. at 744.

The district court found there was an issue for trial on whether Evergreen failed to give prompt notice of loss and as to whether Lumbermens suffered prejudice as a result of any delay by Evergreen in giving notice of the loss to Lumbermens. The case proceeded to a 13-day jury trial on the sole issue of whether Evergreen gave Lumbermens prompt notice of the loss. The jury found in favor of Evergreen.

Evergreen suggests that an appeal of the denial of a motion for summary judgment is not procedurally sound after the court has held a full jury trial on the merits of that issue. Generally, a party may not "appeal an order denying summary judgment after a full trial on the merits" because that "order retains its interlocutory character as simply a step along the route to final judgment." *Ortiz v. Jordan*, 562 U.S. 180, 184, 131 S. Ct. 884, 178 L .Ed. 2d 703 (2011). The Court reasoned that "[o]nce the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion." 562 U.S. at 184; see *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949).

A party who has lost on summary judgment may preserve legal issues or defenses for appeal by incorporating them into a trial motion for judgment as a matter of law. See K.S.A. 2013 Supp. 60-250(a)(1); K.S.A. 2013 Supp. 60-252(c). After the close of Evergreen's evidence, Lumbermens requested judgment as a matter of law for Lumbermens on the issue of whether Evergreen presented sufficient evidence that it met the condition precedent of prompt notice. The district court ruled that Evergreen had presented sufficient evidence on the issue of prompt notice and denied Lumbermens' motion. Procedurally, if Lumbermens wanted to challenge this issue, it should have appealed the district court's ruling on the motion for judgment as a matter of law. After Evergreen presented its evidence, rather than at a chronologically earlier point in time in ruling on the summary judgment motion, the district court had a complete picture of the evidence presented supporting the plaintiff's theory of breach of contract. Lumbermens did not appeal the district court's decision to deny the district court's ruling on the motion for judgment as a matter of law. We decline to examine the district court's ruling on the summary judgment motion after the issue was submitted to a jury.

F. *Exclusion for neglect*

Lumbermens asserts that the district court erred in refusing to grant its motion for summary judgment based on its affirmative defense that coverage for the loss was excluded due to Evergreen's neglect.

Lumbermens asserted that if Evergreen had provided timely notice of the fire, it could have notified its Loss Control Department to assist Evergreen and the fire department in fighting the fire. Lumbermens claimed it also would have provided additional equipment and resources to fight the fire. It is Lumbermens' burden of proving that this exclusionary provision applies to preclude coverage. *Exploration Place*, 277 Kan. at 906.

The policy issued by Lumbermens excluded coverage for loss caused by the insured's neglect. The increased neglect exclusion in the policy provides:

> "l. **Neglect**—'We' do not pay for loss caused by 'your' neglect to use all reasonable means to save covered property at and after the time of loss.
> "'We' do not pay for loss caused by 'your' neglect to use all reasonable means to save and preserve covered property when endangered by a covered peril."

Under "WHAT MUST BE DONE IN CASE OF LOSS," the policy states:

> "2. **Protect Property**—'You' must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. 'We' will pay the reasonable costs incurred by 'you' for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property."

Generally, an exclusion for neglect has "*no application to negligence of the insured before the origin of the fire*. It applies, rather, to situations where no proper diligence was used by the insured at the time of, or following a fire, to save property from destruction." *Tuchman v. Aetna Cas. & Sur. Co.*, 44 Cal. App. 4th 1607, 1615, 52 Cal. Rptr. 2d 274 (1996) (quoting 5 Appleman, Insurance Law and Practice, Fire Coverages § 3115, pp. 404-05).

Lumbermens acknowledges that Kansas does not have any caselaw on the neglect exclusion. In support of its position, Lumbermens cites *Kenney v. Insurance Co.*, 104 Kan. 622, Syl. ¶ 1, 180 Pac. 227 (1919), in which our Supreme Court recognized that the insurance policy had language requiring an insured to minimize loss in a wheat stack after a fire had broken out.

Lumbermens points to the following evidence in support of its position that Evergreen's neglect led to additional damage, but none of the evidence is cited to the record on appeal:

- Evergreen employee Jan Koehn testified that if Evergreen had used more equipment and manpower, the fire could have been extinguished more quickly.
- Fire Marshal Tim Millspaugh testified that Ralls resisted his recommendation to use Class A foam on the fire the first time it was suggested.
- Evergreen sent firefighters home while the pile continued burning.

Lumbermens argues that this evidence establishes a genuine issue of material fact as to Evergreen's neglect. Additionally, Lumbermens points to the procedural posture of the case, noting error in the district court's decision to grant summary judgment to

Evergreen on this issue. Because Lumbermens was the sole party to move for summary judgment on this issue, Lumbermens claims it was error for the district court to grant summary judgment in Evergreen's favor on the neglect issue. But in *Wilcox v. Wyandotte World-Wide, Inc.*, 208 Kan. 563, 572, 493 P.2d 251 (1972), our Supreme Court held:

"Under K.S.A. 60-256 a court may enter summary judgment in favor of the non-moving party on its own motion where there remains no genuine issue as to any material fact and on the evidentiary record judgment must be for one of the parties as a matter of law. [Citation omitted.]"

As such, we find the district court has discretion to enter summary judgment in favor of the nonmoving party if there is no genuine issue of material fact in the record.

The record does not show a genuine issue of material fact on the issue of neglect. In his deposition as Lumbermens' corporate designee, Thompson testified that Lumbermens was not contending that the fire department or Evergreen failed to do anything in fighting the fire that either of them could have done. At the time that the district court ruled on Lumbermens' second motion for summary judgment, the following facts had been determined to be uncontroverted:

"15. Evergreen and its employees made an appropriate, good faith effort to extinguish the subject fire and help the fire department as much as possible.
"16. The subject fire was extinguished much faster than it otherwise would have been because Evergreen's employees used front end loaders and heavy equipment otherwise unavailable to the fire department to gain access to the burning core. Without that labor and equipment, it would have taken 'a lot longer' to extinguish the fire."

In prior proceedings Lumbermens failed to controvert these assertions of fact, and it failed to present evidence that Evergreen was neglectful in the way that it chose to fight

42

the fire. Pointing to evidence on appeal that was not included in its motion for summary judgment is not sufficient to establish a genuine issue of material fact. Therefore, the district court did not err in granting summary judgment to Evergreen on the issue of exclusion of coverage based on neglect.

G. *Exclusion for failure to cooperate*

Lumbermens asserts that the district court erred in refusing to grant its motion for summary judgment based on its affirmative defense that coverage for the loss was excluded based on Evergreen's failure to cooperate. Evergreen also requested summary judgment in its favor on this issue, claiming that Lumbermens could not provide sufficient evidence to support the policy defense of failure to cooperate. Lumbermens' response to Evergreen's sixth motion for partial summary judgment is not included in the record on appeal.

Lumbermens claimed that it was not obligated to pay for Evergreen's loss under the insurance policy because Evergreen failed to cooperate. The policy issued by Lumbermens required cooperation in the case of loss.

Under "WHAT MUST BE DONE IN CASE OF LOSS," the policy states:  "9. **Cooperation**—'You' must cooperate with 'us' in performing all acts required by the Commerical Output Program Coverages."

Lumbermens claims that Evergreen failed to cooperate by:  (1) failing to provide documents and information requested by Lumbermens; (2) providing false information and concealing relevant information; and (3) providing no written response to the letter from Lumbermens itemizing the reasons it was denying the claim. Lumbermens recognizes that it has an obligation to show prejudice arising from Evergreen's

noncooperation, and Lumbermens merely asserts the prejudice resulting from Evergreen's noncooperation was so one-sided that Lumbermens was entitled to judgment as a matter of law.

In its motion for summary judgment, Lumbermens complained that Evergreen failed to provide documents and information requested by Lumbermens. But the record does not support Lumbermens' complaint. Lumbermens requested that Evergreen provide one worksheet, and it acknowledged that Ralls submitted the requested worksheet regarding Evergreen's claim and the amount of loss. Lumbermens fails to identify any additional specific information or paperwork that was requested but not provided by Evergreen. Ralls filled out the only worksheet requested by Lumbermens in a timely manner.

Next, Lumbermens alleges that Evergreen failed to inform the insurance company of a list of facts that it considered relevant to the claim, such as: (1) a portion of the mulch was being sold or had been sold; (2) that the burned mulch had been separated into windrows; (3) that Evergreen had taken photographs of the burning mulch; (4) that Evergreen planned to use some of the burned mulch to repair roads; (5) that Evergreen initially declined to use foam to put out the fire; and (6) the mulch pile was in violation of the fire codes at the time the fire started. Evergreen claims many of the facts listed by Lumbermens were irrelevant. Lumbermens failed to visit the site of the fire to examine the pile of mulch. Lumbermens failed to request the information that it now claims Evergreen should have provided, and Evergreen disputes that it did not communicate some of the required information. For example, Lumbermens complains that Evergreen did not communicate the fact that some of the mulch had been sold or removed from the property. But on March 30, 2009, Ralls informed Thompson that some of the mulch had been removed. In addition, Evergreen notes that not all of the conversations between Ralls and the insurance company were documented. Evergreen points to Lumbermens'

44

failure to investigate the claim, noting that Lumbermens' "duty to investigate cannot be foisted onto the policyholder."

Lumbermens complains that Evergreen provided false information and concealed relevant information. This allegation standing alone is not supported by any specific allegations. Lumbermens never asked to see the damaged mulch and did not inspect the premises as part of its investigation of the claim. Evergreen also encouraged a representative from Lumbermens to inspect the scene of the fire, but the representative declined. There is no evidence that Evergreen provided any false information or had an intent to conceal relevant information.

Finally, Lumbermens complains that Evergreen made no written response to its letter of denial. Evergreen responds that it had no obligation to continue to provide information to Lumbermens after it denied coverage. See *In re Estate of Moe*, 240 Kan. 242, Syl. ¶ 1, 729 P.2d 447 (1986) (general contract law provides that once performance has begun and prevention of further performance takes place by repudiation or otherwise, the actual breach excuses further performance). When Ralls contacted Lumbermens to have a conversation after he received the declination letter, he was told to consult a lawyer. Evergreen had no obligation to respond to the letter denying coverage.

Lumbermens cites to Couch on Insurance for the general proposition that an insured has a duty to cooperate when making a claim. Under the section titled "Failure to Disclose Information," it provides:

> "In order to prevail on defense of noncooperation, the insurer must show, by a preponderance of evidence, an unreasonable and willful pattern of refusing to answer material and relevant questions or to supply material and relevant documents.
> . . . .

45

"When an insurer determines that it needs specific information from the insured and that the information is not forthcoming, it should specify in writing the information needed and advise the insured of the consequences of its failure to provide it." 14 Couch on Insurance 3d § 199:39 (2014).

Lumbermens falls well short of showing that Evergreen had "an unreasonable and willful pattern of refusing to answer material and relevant questions or to supply material and relevant documents." 14 Couch on Insurance 3d § 199:39. In addition, its only claim of prejudice is a blanket statement that the prejudice was "clear and pervasive," but Lumbermens fails to point to any evidence showing such prejudice. In examining a motion for summary judgment, all facts in support of such motion must be supported in the record. The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman*, 296 Kan. at 644-45. The court is not in a position to speculate what prejudice was suffered by Lumbermens due to Evergreen's alleged failure to cooperate.

Lumbermens failed to show that Evergreen did not cooperate and that the lack of cooperation resulted in substantial prejudice to Lumbermens. The district court did not err in ruling in favor of Evergreen in the competing motions for summary judgment on this issue.

INTERPRETATION OF POLICY LIMITS

Lumbermens argues that the district court erred when it ruled that the insurance policy provided property coverage with a limit of $237,000.

Evergreen originally asserted that the policy had a $117,000 limit for the mulch, covered under the policy as stock in the open. However, after the close of discovery and

shortly before the pretrial conference, Lumbermens filed a second amended answer, asserting a counterclaim against Evergreen for reformation of the policy on the basis that a mutual mistake led to a misunderstanding about the policy limits. In its fifth motion for partial summary judgment, Evergreen sought dismissal of Lumbermens' reformation counterclaim on the grounds that Lumbermens could not meet its burden of establishing a genuine issue of material fact. In the alternative, Evergreen claimed that Lumbermens had waived, is estopped, or is otherwise precluded from asserting the counterclaim as a matter of law. Evergreen sought an order of partial summary judgment declaring that (1) the insurance policy provided coverage for $237,000 for Evergreen's insured stock, including stock stored in the open on the subject location; and (2) Evergreen's mulch was stock and business personal property covered by the policy.

Lumbermens' response to Evergreen's fifth motion for summary judgment is not included in the appellate record. Thus, it is difficult to ascertain whether Lumbermens showed a genuine issue of material fact on the coverage issue. But because this issue is focused primarily on the language of the policy rather than on facts, we can address this issue based solely on a construction of the policy. The interpretation and legal effect of written instruments, such as insurance policies, are matters of law, and this court exercises unlimited review. When interpreting written contracts, the primary rule of construction is to ascertain the parties' intent. If the terms of the contract are unambiguous, the parties' intent is to be ascertained from the contract language without applying rules of construction. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

An insurance policy is to be read in its entirety, construing its terms collectively in a way that gives effect to the intention of the parties. *AT&SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 729, 71 P.3d 1097 (2003). Courts should not strain to find an

47

ambiguity or make another contract for the parties; rather, it should enforce the contract as written. *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 576, 56 P.3d 789 (2002).

The obligation of the insurance company is governed by the provisions of the policy and its endorsements. Words used in an insurance policy are to be read and understood in their ordinary and usual meaning. *Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.*, 189 Kan. 528, 532, 370 P.2d 396 (1962). An insurance company prepares its own policies and is responsible for any proper consequences of not making the policy clear and understandable. Where an ambiguity exists in the policy, the rules of construction favor the policyholder. *Leiker v. State Farm Mutual Automobile Ins. Co.*, 193 Kan. 630, 633-34, 396 P.2d 264 (1964).

In ruling on the issue, the district court found that the plain and unambiguous language of the policy provided for coverage for mulch up to $237,000.

Lumbermens initially issued a policy of insurance to Evergreen Pallet, and Evergreen Recycle was added as an additional insured in May 2008. At the time that Evergreen Recycle was added to the policy, Ralls declined coverage for the mulch piles. Both Cheri Ricke, an employee of Eck Agency, and Ralls believed that mulch was excluded from the policy. In September 2008, Evergreen contacted Ricke and requested a quote based on four piles of mulch with an assigned value to each pile. An August 21, 2008, email provided the quote request to Lumbermens' senior underwriter:

> "Insured has more mulch now [than] what he started with when first discussed. He has 4 piles at the 53rd St. location about a 1/4 [mile] from the building and approx 30 yds apart except for biggest pile and it is farther from the others.

"He would like you to quote:     #1  $70,000—10,000 cubic yd

                                 #2  $  7,000

                                 #3  $20,000

                                 #4  $20,000

"Please let me know if we can do this and an annual premium."

The underwriter responded with a rate quote for the overall value of much rather than a separate quote for each pile:  "Using a $2 rate $117,000 = $2340 AP annually."

In September 2008, Lumbermens issued insurance on the mulch in the limits requested by Eck Agency. The amounts representing the four piles were combined and added to the declarations sheet on the policy as "stock in open" for total coverage in the amount of $117,000.

The "Schedule of Coverages" of a policy determines what is covered property under the policy. The policy did not differentiate between Evergreen Pallet and Evergreen Recycling. Effective September 8, 2008, the insurance policy's "Schedule of Coverages" read as follows:

"BPP Excl. Stock          55,000
"Stock                   120,000
"Stock                   117,000
"Stock in Open."

Evergreen claims that both "stock" and "stock in open" provide coverage for the mulch. The amended schedule identified two complementary coverages for "stock":  one with a $120,000 limit without any modifying language and one with a $117,000 limit below which the words "stock in open" appear on a separate line. Evergreen was charged separate premiums and deductibles in correspondence to each limit.

49

Lumbermens does not controvert that "stock in open" is covered business personal property and that "mulch" is considered "stock in open." Additionally, "stock" is covered business personal property, and it is uncontroverted that "mulch" is "stock." The court noted that "[i]n response to the motion for summary judgment, [Lumbermens] did not propose any additional facts, controverted or uncontroverted, as to [Lumbermens'] understanding of the policy." During one of his pretrial depositions, Thompson, a representative of Lumbermens, admitted that mulch qualified as stock as defined by the policy.

The district court ruled that "mulch" is "stock" under the policy. As such, there was $120,000 in coverage for "stock," including "mulch," and an additional $117,000 for "stock in open," resulting in a $237,000 limit for the destroyed mulch. The court summarized:

> "Evergreen Pallet is in the business of refurbishing pallets. Evergreen Recycle is in the business, among others, of grinding wood into mulch and selling it. The parties clearly intended to have Evergreen's mulch be 'covered property' as 'Stock in the Open' under the Schedule of Coverages. The issue is whether the term 'Stock' also covers mulch. [Lumbermens] argued the term 'Stock' covers only pallets and not mulch.
>
> "However, this court ruled that nothing in the policy specifically limited 'Stock' to pallets or anything else. Whether it is mulch, compost, or pallets, the only distinction between 'Stock' and 'Stock in Open' is the location.
>
> "At the hearing, this court found that mulch was 'Stock' and 'Stock in the Open', i.e., that all 'Stock in the Open' was also 'Stock', but not all 'Stock' was 'Stock in the Open'. For example, lumber is kept both inside and outside at a lumberyard. All lumber, whether inside or out, would be 'Stock' but only lumber kept outside would [be] 'Stock in Open'. The only distinction is where it is kept. Nothing in the policy limit[s] stock to only stock that was not in the open. Therefore, mulch coverage started at $120,000 for 'Stock', whether inside or outside, and additional $117,000 mulch coverage was added for just 'Stock in the Open'.

50

"As a result, this court found that the total coverage for mulch on the date of the fire was discovered was $237,000, that is $120,000 under stock and $117,000 for stock in open. Therefore, summary judgment is warranted on this issue."

We agree with the district court. The policy defined stock as "merchandise held in storage or for sale, raw materials and in process or finished goods . . . located on or within 100 feet of the described premises." Evergreen was in the business of manufacturing or selling mulch. We conclude that Evergreen's mulch is stock as defined by the policy.

On appeal, Lumbermens now claims that "stock" excluded "stock in the open" because under the heading "Property Not Covered," the language of the policy states:

"13. **Property More Specifically Insured—**'We' do not cover property which is more specifically insured in whole or in part by *any other insurance*. 'We' do cover the amount in excess of the amount due from the more specific insurance whether 'you' can collect on it or not." (Emphasis added.)

Lumbermens claims that this clause restricts coverage of the mulch to $117,000 because it is more specifically insured by that description. But the language in this clause of the policy refers to a separate and distinct insurance policy and does not exclude coverage for the mulch which falls under the definition of stock under the very policy where this language cited by Lumbermens is found.

In addition, Evergreen claims that Lumbermens inaccurately states that the policy provided no coverage for mulch prior to September 2008. Evergreen points out that prior to issuing a policy to Evergreen Pallet in 2007, Lumbermens was aware that grinding wood waste into mulch and selling mulch were components of the existing business operation. The application for insurance states:  "If recycling is completed, do they sell

51

mulch?" Answer: "Y." In addition, a note stated: "On the grinding class, this is a new class for [Ralls]. He is taking old broken pallets and grinding them down." From the outset, the policy provided insurance for a grinder used to produce mulch, and it provided blanket coverage for stock with a limit of $120,000. Mulch was always insured as stock, and there was no exclusion for mulch. Lumbermens claims that this interpretation was not the intention of the parties.

After Evergreen Recycle was added to the policy in May 2008, Lumbermens added an "Exclusion—Designated Products Endorsement" to the policy. The endorsement excluded liability coverage, but not property coverage, for mulch piles. At the bottom of the exclusion, it specifically stated that "[t]his insurance does not apply to 'bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of any of 'your products' shown in the Schedule." Thus, the exclusion did not modify insurance provided in the property coverage portion of the policy. As such, the policy's $120,000 property coverage for stock, including mulch, remained in effect.

The policy is unambiguous. Mulch falls under "stock" and "stock in open," and any loss may be reimbursed under both policy limits. Evergreen argues that if Lumbermens had intended to exclude "mulch" from the general definition of "stock," the policy should have included such limiting language. Lumbermens urges this court to consider the parties' intentions and understanding of the coverage as parol evidence. See *Ives v. McGannon*, 37 Kan. App. 2d 108, 118, 149 P.3d 880 (2007). Because the policy is unambiguous, we do not turn to other sources to consider the parties' understanding of the policy or the parties' intentions.

The policy of insurance provided that mulch would be covered under both "stock" and "stock in open" as defined by the policy. The fact that Evergreen bought additional

coverage in September 2008 does not negate the coverage under the original policy. As such, the district court correctly interpreted the policy limit as $237,000.

REFORMATION

As an alternative argument, Lumbermens requests that the policy should be reformed to express the true intention of the parties, finding no coverage for mulch under the original policy and only $117,000 of coverage under the new policy. Lumbermens claims there was mutual mistake that led to additional coverage for the mulch.

Reformation is an equitable remedy which provides the court with a tool to reform a contract to express the true intention of the parties. But it is an extraordinary remedy and should be exercised only with great caution. See *Mut. of Omaha Ins. Co. v. Russell*, 402 F.2d 339, 344 (10th Cir. 1968). Kansas courts have indicated a reluctance to reform written contracts where there is no evidence of fraud, mistake, duress, undue influence, unconscionability, or evidence that the contract as written will cause harsh or unreasonable results. See *Squires v. Woodbury*, 5 Kan. App. 2d 596, 601, 621 P.2d 443 (1980), *rev. denied* 229 Kan. 671 (1981). When reformation of a policy is sought on the ground of mistake, and without fraud, it is necessary to establish mutuality of mistake by clear and convincing evidence. *Gilbert v. Mutual Benefit Health & Acc. Assn.*, 172 Kan. 586, 592, 241 P.2d 768 (1952).

A definite agreement must have been reached to allow reformation. The courts should not reform a contract unless there was a prior agreement to which the contract as written can be reformed. *Tuloma Pipe & Supply Co. v. Townsend*, 77 P.2d 535, 537 (Okla. 1938). The court will not reform an insurance contract to "conform to the parties' negotiations or haphazardly expressed intentions." *Industrial Indemnity Co. v. Aetna Casualty & Surety Co.*, 465 F.2d 934, 938 (9th Cir. 1972).

Reformation is a tool available to the courts to carry out the true intent of the parties. Our Supreme Court has recognized:

"The very purpose of an action for reformation is to have an instrument altered to make it state the true agreements of the parties to it, and the fact the instrument sought to be reformed is couched in clear and unambiguous language does not preclude inquiry as to whether it expressed the agreement." *Snider v. Marple*, 168 Kan. 459, 466, 213 P.2d 984 (1950).

Lumbermens points specifically to mutual mistake as justification for the reformation. Mistake is a special matter that must be pleaded with particularity. K.S.A. 2014 Supp. 60-209(b). There is no claim of mutual mistake in Lumbermens' pleadings or in the pretrial order. In addition, Lumbermens did not provide a witness to testify that Lumbermens made a mistake that led to a misunderstanding on the policy limits. Without a witness, Lumbermens could not prove mutual mistake.

It was Lumbermens' burden on a summary judgment motion to come forward with enough evidence supporting its theory of mutual mistake justifying the remedy of reformation. We agree with the district court that Lumbermens did not meet this burden even drawing all reasonable inferences in favor of Lumbermens.

TRIAL ERRORS

After the district court ruled on the various motions for summary judgment, one issue remained for trial: whether Evergreen met the policy prerequisite of providing prompt notice of loss. A 13-day trial was held, and the jury found in favor of Evergreen, resulting in a judgment of $231,000. We now turn our attention to the trial errors alleged by Lumbermens.

54

A. *Did the pretrial instructions substantially prejudice the jury?*

Lumbermens argues that the district court erred by instructing the jury just prior to opening statements regarding certain facts and legal conclusions the court made during the summary judgment process. Lumbermens complains that the pretrial instructions prejudiced the jury by encouraging the jury to put great weight on those facts. Specifically, Lumbermens points to the fact that the court instructed the jury that "Evergreen fulfilled all conditions precedent."

Lumbermens did not object to the district court's preliminary comments at trial, and there should be no reversal unless the comments amount to clear error. K.S.A. 2014 Supp. 60-251; *State v. Williams*, 295 Kan. 506, 510-16, 286 P.3d 195 (2012).

Immediately prior to opening statements, the trial judge stated:

"Now that you've been sworn, I will briefly tell you something about the case. In earlier proceedings the Court found the following facts to be established:  . . . .
        . . . .
    "Evergreen Recycle owned an inventory of wood mulch that was insured by [Lumbermens'] policy. The policy's combined limit for loss of Evergreen's mulch was $237,000. In early 2009 some of Evergreen's wood mulch caught fire and burned and smoldered. Evergreen notified Sedgwick County Fire Department of the fire. As a condition precedent for a claim for loss or damage to the wood mulch that was insured by [Lumbermens], Evergreen was required to give Lumbermens or its agency prompt notice, including a description of the property involved. The property loss notice was dated—I'm sorry. The property loss notice dated March 19th of 2009 was the notice that fulfilled the condition precedent. Eck Agency and its employees were Evergreen's agent. Eck Agency was not an agent for Lumbermens for the purpose of receiving the notice of loss."

55

Lumbermens complains that the court's preliminary instructions informed the jury that the very issue before it was already decided because it "advised the jury that the question of fact supposedly at issue—timely notice—had already been decided because 'the notice fulfilled the condition precedent.'"

Evergreen responds that it is appropriate for the court to issue preliminary instructions to the jury before opening statements, especially in a case where many of the relevant facts were established in summary judgment proceedings. See K.S.A. 2014 Supp. 60-256(d) (In the case of a partial summary judgment motion, the facts determined not to be genuinely in issue "must be treated as established in the action."); K.S.A. 2014 Supp. 60-251(b)(4) (the court may instruct the jury at any time before the jury is discharged). Additionally, Evergreen contends the court's comments accurately represented the law.

Lumbermens asserts that the court essentially instructed the jury that challenges to Evergreen's conduct or behavior should not be considered. It complains that the facts relating to Ralls' state of mind and reasoning for the delay in reporting the claim were relevant, but "the District Court set the tone for the entire controversy by stating Evergreen fulfilled the conditions precedent."

The judge's statement to the jury was not an accurate statement. But, as we will discuss shortly, the judge's remark was invited by Lumbermens in its proposed instructions filed in advance of the trial. Besides, it seems rather implausible that the judge's remark had any effect on the jury's ultimate decision after having heard 13 days of trial testimony on that very issue—whether Evergreen had provided prompt notice as required by the policy. Any error in the judge's remark was harmless.

We also find that Lumbermens invited any error on this issue. Generally, when a party has invited error, the party cannot complain of the error on appeal. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203, 308 P.3d 1238 (2013). In Lumbermens' supplement to the proposed jury instructions, submitted to the court in advance of the trial, Lumbermens suggested the following instruction:

> "1. As a condition precedent to a claim for loss or damage to the wood mulch that was insured by [Lumbermens], Evergreen was required to give [Lumbermens] or its agent prompt notice, including a description of the lost or damaged property. (Order On Notice Of Loss filed 2/20/13)
> "2. *The Notice Of Loss dated March 19, 2009 was the notice that fulfilled the condition precedent*." (Emphasis added.)

The instructions that Lumbermens complains of for the first time on appeal contained nearly identical language to that proposed by Lumbermens, including the now complained-of language that the March 19, 2009, notice fulfilled the condition precedent. Accordingly, the invited error doctrine applies.

B. *Did the jury instructions unnecessarily define "prompt notice" as "reasonable under the circumstances" rather than allowing the policy to speak for itself?*

Lumbermens contends that the jury was unnecessarily instructed on the meaning of the term "prompt notice," asserting that the instruction "inappropriately injected additional language into the policy" rather than allowing the insurance policy to speak for itself.

57

Instruction No. 6 provided:

> "[Lumbermens'] insurance policy provided that in case of loss, Evergreen must give [Lumbermens] prompt notice of loss including a description of the property.
> "Notice is 'prompt' if it is given within a reasonable time under the circumstances. In determining the reasonableness of a delay in giving the required notice, the facts and circumstances of each particular case must be considered."

Lumbermens did not object to this jury instruction on this basis at trial.

The policy language related to timely notice states:

> "**WHAT MUST BE DONE IN CASE OF LOSS**
> "1. **Notice** - In case of a loss, 'you' must:
>     "a. give 'us' or 'our' agent prompt notice including a description of the property involved ('we' may request written notice)."

The policy did not include a definition of prompt notice.

For jury instruction issues, the standards of review on appeal differ as the analysis progresses: (1) the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) the court should use unlimited review to determine whether the instruction was legally appropriate; (3) the court should determine whether there was sufficient evidence, viewed in the light most favorable to the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the court must determine whether the error was harmless, utilizing the test set forth in *State v. Ward*, 292 Kan. 541, Syl. ¶ 5, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012); see *Foster v. Klaumann*, 296 Kan. 295, 301-02, 294 P.3d 223 (2013).

Relevant to this case, a party must object to the trial court's giving of or failing to give a jury instruction before the jury retires. K.S.A. 2014 Supp. 60-251(c). The party must state clearly what matter is objectionable and give the legal grounds for the objection. If, as in this case, there is no objection, we must limit our review to a determination of whether the instruction was clearly erroneous and whether the error affects substantial rights. K.S.A. 2014 Supp. 60-251(d)(2).

A two-step process is used to determine whether the challenged jury instruction is clearly erroneous. First, we must determine whether there was any error at all by considering whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record. Then if we find error, we must decide whether we are firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming error in the instruction has the burden to prove the degree of prejudice necessary for reversal. See *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013).

Lumbermens claims the court's instruction confused the issue and removed the decision from the province of the jury. Lumbermens points to Evergreen's claim that Ralls was on fire suppression duty 24/7 and did not provide notice of loss to Lumbermens prior to March 19, 2009, because he was too busy to do so.

Lumbermens' policy does not define "prompt." A requirement in a policy for "prompt" notice generally means that the notice must be given within a reasonable time under the circumstances of the case. 44 Am. Jur. 2d Insurance § 1320. Under Kansas law, an insurance policy calling for notice of a potential claim "as soon as practicable" requires notice within a reasonable time in view of all relevant facts and circumstances. See *Ash Grove Cement Co. v. Employers Ins. Of Wausau*, 513 F. Supp. 2d 1200, 1206 (D.

59

Kan. 2007), *order vacated in part on other grounds* 530 F. Supp. 2d 1199 (D. Kan. 2008).

The jury instruction regarding prompt notice is consistent with Kansas law. Lumbermens cites to no caselaw showing otherwise. Prompt notice is generally accepted as notice within a reasonable time in view of all relevant facts and circumstances. The jury instruction was not clearly erroneous.

C. *Did the jury instructions regarding the requirement of a showing of prejudice resulting from the late notice misstate Kansas law?*

Lumbermens contends that the jury instructions (Jury Instruction Nos. 8 and 9) misstated Kansas law. Lumbermens complains about the wording of the instructions, asserting that the descriptors placed on the term prejudice emphasize and unfairly target Lumbermens' burden to show prejudice.

This issue is moot. The jury found that notice of loss was prompt and therefore had no reason to consider whether Lumbermens was prejudiced by untimely notice.

D. *Did the district court err in ruling on motions in limine?*

Lumbermens contends that a new trial should be ordered based on the district court's erroneous rulings on the motions in limine. Specifically, Lumbermens complains about the exclusion of: (1) cause and origin testimony; and (2) testimony that the investigation by Lumbermens was within insurance industry standards.

We apply a similar review of a decision regarding a motion in limine to that of a decision regarding an evidentiary ruling. First, we determine the relevance of the

60

challenged evidence, *i.e.*, whether the evidence is probative and material. The district court's determination that the evidence is probative is reviewed for an abuse of discretion; the court's determination that the evidence is material is subject to de novo review. *State v. Frierson,* 298 Kan. 1005, 1015, 319 P.3d 515 (2014) (quoting *State v. Shadden*, 290 Kan. 803, 817-18, 235 P.3d 436 [2010]). If the evidence is relevant, we then determine, de novo, which rules of evidence or other legal principles govern the admission of the evidence in question. Appellate review of the district court's application of the pertinent legal rules and principles depends upon whether the rule or principle permits the district court to exercise its discretion or whether the rule raises questions of law. Next, we must consider whether the district court abused its discretion in weighing the probative value of the evidence against the potential that the evidence will unfairly and prejudicially surprise a party who has not had reasonable opportunity to anticipate the evidence. *Frierson*, 298 Kan. at 1015-16.

Once the district court follows the steps outlined above and determines that the evidence will be inadmissible at trial, the court also must find that a pretrial ruling is justified—as opposed to a ruling during trial—because the mere offer or mention of the evidence during trial may cause unfair prejudice, confuse the issues, or mislead the jury; the consideration of the issue during trial might unduly interrupt and delay the trial; or a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation. *Schlaikjer v. Kaplan*, 296 Kan. 456, 467, 293 P.3d 155 (2013).

First, Lumbermens complains that the district court prohibited the introduction of any evidence regarding the results of a cause and origin examination of the insured property. Fire Marshal Millspaugh provided testimony, in the form of a proffer, that based on his many years investigating fires, he believed any cause and origin investigation started after the notice of loss was provided would have resulted in a finding that the cause of the fire was undetermined. Lumbermens argues the testimony is highly

relevant because it supported its theory that Evergreen's failure to submit a timely notice of loss prejudiced Lumbermens in its investigation and adjustment of the claim. Lumbermens does not support its claim with citations to the record or to cases that support its position.

During discovery, Lumbermens was never able to point to any evidence that suggested the fire was not accidental spontaneous combustion. Thompson, Lumbermens' corporate representative, testified that the fire reports suggest that the fire was caused by spontaneous combustion. Millspaugh testified that he did not have an impression that there was a reason to follow up based on wrongdoing. Evergreen also notes that Millspaugh was not an expert on the cause and origin of spontaneous fires in mulch, and Lumbermens previously disputed Millspaugh's foundation to give any expert opinion about spontaneous combustion. Based upon these facts we find no error in the district court's ruling on this aspect of Lumbermens' motion in limine.

Next, Lumbermens claims that the district court erroneously excluded testimony that its investigation of the claim was within industry standards. Lumbermens asserts that the jury repeatedly heard from the plaintiff that Lumbermens' investigation of the claim was inadequate, but it was not allowed to rebut those claims with expert testimony from Richard Mintzer and Dale Crawford, both claim-handling experts who could have provided the jury with information about how claims similar to the case at hand are handled by insurers and whether Lumbermens properly investigated the loss.

Lumbermens did not sufficiently proffer the testimony of Mintzer and Crawford. In its brief, Lumbermens points to information that the experts could have generally provided, but there was no formal proffer of their expected testimony. When the trial court grants a motion in limine to exclude evidence at trial, the party limited by the motion must make a sufficient proffer of the excluded evidence to preserve the issue for

appeal. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 278-79, 225 P.3d 707 (2010). Without a proffer, the issue is not preserved for appeal.

E.  *Did the district court err in excluding evidence during the course of trial?*

Lumbermens claims that the district court made evidentiary rulings at trial that created unfair prejudice against Lumbermens' ability to controvert the "narrative" created by Evergreen. Ignoring appellate rules, Lumbermens provides no citations to the record to support its argument on this issue. These citations are vital when an appellant is complaining about specific rulings at trial regarding the admission of evidence. As such, Lumbermens' brief violates Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 41), which requires "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." The record on appeal in this case consists of five banker's boxes of documents, including a computer disc containing thousands of pages. The transcript of the jury trial consists of 13 volumes containing a trial record of approximately 2,406 pages. We are unable to review these evidentiary rulings without citations in the record to support Lumbermens' complaints of error. Lumbermens has failed to show how any of the district court's rulings excluding evidence amount to error warranting a new trial.

## DISMISSAL OF THIRD-PARTY DEFENDANT ECK AGENCY

Finally, Lumbermens complains that the district court erred in granting third-party defendant Eck Agency's motion for summary judgment and dismissing it from the lawsuit.

Eck Agency is a Kansas corporation involved in the business of insurance sales. Eck Agency is what is commonly known as an independent agent. At times, Eck Agency

may be an agent for an insurance company by signing an agency agreement with the authority to solicit business, take applications, and bind coverage. At other times, however, Eck may be a broker for an insurance company. When acting as a broker, Eck Agency lacks the authority to bind the company but may submit applications on behalf of Eck Agency's customers to the insurance company.

In 2004, Eck Agency began an ongoing relationship with Evergreen by assisting Evergreen with its insurance needs. There was no written contract defining this relationship.

On November 27, 2007, Eck Agency signed a Broker Acknowledgement Form with Lumbermens. The brokerage agreement defined Eck Agency's relationship to Lumbermens: "The broker is not an appointed agent of [Lumbermens]. The broker represents the customer; [Lumbermens] will not be bound by any statements made by the broker to the customer."

Evergreen gave notice of the mulch fire to Eck Agency on or about February 12, 2009, the day the fire was discovered. Eck Agency reported Evergreen's fire and loss to Lumbermens on a property loss notice dated March 19, 2009. On May 27, 2009, Lumbermens sent Evergreen a declination of coverage, with a copy to Eck Agency.

Evergreen filed suit against Lumbermens for breach of contract, and Lumbermens filed a third-party petition against Eck Agency for indemnity. Lumbermens claimed that Eck Agency was not its agent; however, if the court found Eck Agency to be Lumbermens' agent, then Lumbermens was entitled to indemnification from Eck Agency for any damages it might owe to Evergreen.

Eck Agency moved for summary judgment on Lumbermens' third-party petition, arguing there was no legal basis under which Eck Agency would ever need to indemnify Lumbermens for a loss in a lawsuit for breach of contract relating to policy proceeds and coverage. In response, Lumbermens argued that Eck Agency was not its agent for the purpose of receiving notices of loss. However, Lumbermens argued that in the event a jury finds that Eck Agency received prompt notice of loss, then Eck Agency would be liable to Lumbermens for: (1) negligently failing to provide prompt notice of loss to Lumbermens; and (2) for breach of the brokerage agreement for acting as Lumbermens' agent in contradiction with the brokerage agreement.

The district court ruled that (1) Eck Agency was not Lumbermens' actual or apparent agent for the purpose of receiving notice of loss; and (2) Evergreen did not provide Lumbermens with notice of loss until March 20, 2009. On February 7, 2013, the district court entered judgment outright based on the court's previous ruling that Lumbermens' claims were limited to claims of indemnity.

Lumbermens' position is contrary to what it argued at the district court level. At the district court, Lumbermens contended that its only claim for indemnity was based on implied contractual indemnity. On appeal, it abandoned any argument regarding the district court's ruling regarding its claim based on implied contractual indemnity. Lumbermens' indemnity claim was predicated on Eck Agency being its agent for purposes of giving notice of loss. But because the brokerage agreement limited Eck Agency's role to one of a broker, there is no basis for indemnity.

For the first time on appeal, and contrary to its position below, Lumbermens argues the district court failed to consider its "other" indemnity claims, such as breach of the brokerage agreement and breach of duty. Lumbermens does not assert that any

exception allows for the court to consider an issue on appeal that was not argued in its response to Eck Agency's summary judgment motion.

Lumbermens is precluded from complaining about the district court's ruling because its only indemnity claim in its response to the summary judgment motion was for implied contractual immunity. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203, 308 P.3d 1238 (2013). Lumbermens abandoned its claim for implied contractual immunity by failing to complain about the district court's ruling on appeal. And regarding Lumbermens' attempt to raise new bases for indemnity, we find that this court is precluded from addressing Lumbermens' newly asserted indemnity claims because they were not presented as genuine issues of material fact in the summary judgment motion. This district court did not err in granting summary judgment in favor of Eck Agency and dismissing it as a third-party defendant.

EVERGREEN'S CROSS-APPEAL

Evergreen raised two issues in its cross-appeal. Both issues were resolved with summary judgment motions. The district court ruled:  (1) Lumbermens' policy did not provide an option for Evergreen to give notice of loss to Eck Agency; and (2) Eck Agency was not Lumbermens' ostensible agent for that purpose. Because we find no reversible error in the issues raised by Lumbermens, the cross-appeal is now moot.

Affirmed; the cross-appeal is dismissed.

66