NOT DESIGNATED FOR PUBLICATION

No. 118,631

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MITCHELL SIGG, SIGG MOTORS, LLC, NATIONS LEASE AND REMARKETING, LLC,
NATIONS FINANCIAL, LLC, and JOHN SIGG,
*Appellants*,

v.

MARK SEVART and DINA MORRISON,
*Appellees*.

MEMORANDUM OPINION

Appeal from Allen District Court; A. J. WACHTER JR., judge. Opinion filed March 15, 2019.
Affirmed.

*David A. Clark* and *Linus A. Thuston*, of Chanute, for appellants.

*Daniel F. Church*, of Morrow Willnauer Church, L.L.C., of Kansas City, Missouri, for appellee
Mark Sevart.

*Stephen Phillips*, assistant attorney general, for appellee Dina Morrison.

Before STANDRIDGE, P.J., PIERRON and GREEN, JJ.

PER CURIAM: Mitchell Sigg and his business entities (Plaintiffs) sued Mark
Sevart, alleging Sevart committed legal malpractice by filing a legal malpractice suit
against Steven Doering on Plaintiffs' behalf. The jury found Sevart 50% at fault and
Plaintiffs 50% at fault. Plaintiffs appeal on multiple grounds. For the reasons explained
below, Plaintiffs' claims fail. Accordingly, we affirm.

1

To understand the facts in this case, one must become familiar with multiple lawsuits going on as far back as 2001. In the first case, Linda Sigg filed for divorce from her husband, John Sigg, in May 2001. John and Linda developed a thriving used car enterprise throughout the course of their marriage. This enterprise consisted of several distinct business entities. John and Linda's adult son, Mitchell Sigg, was involved in the couple's businesses and was a part owner of some of the business entities. Linda added the business entities and Mitchell as parties to the divorce action because she believed John and Mitchell were transferring marital assets to Mitchell and the business entities in order to keep Linda from receiving her fair share of the marital assets. The business entities include Sigg Motors, LLC, Nations Lease & Remarketing, LLC, and Nations Financial, LLC. These business entities are hereinafter referred to as the "business plaintiffs."

Mitchell filed a separate civil action on behalf of himself and one of the business entities against John and Linda, alleging several causes of action against Linda and seeking a declaratory judgment as to his share of the business assets. The divorce and the civil case were consolidated; together they are referred to as the "Sigg Divorce." Mark Sevart represented Mitchell during a late portion of the Sigg Divorce case before the trial court beginning in July 2007.

Attorney Steven Doering represented Linda in the Sigg Divorce. John and Mitchell tried three times to remove Doering as Linda's attorney during the Sigg Divorce. John and Mitchell alleged that Doering had previously worked for them on a number of matters and gained confidential information while doing so that would be used to their detriment in the Sigg Divorce. All three motions were denied; the trial court found Doering's prior representation of John and Mitchell was temporally remote from the Sigg Divorce and did not make Doering privy to confidential information he could use against John and Mitchell in the Sigg Divorce.

In 2006, while the Sigg Divorce was pending, John went to the Association for Honest Attorneys. The Association for Honest Attorneys is an organization run by Joan Heffington. Heffington is not an attorney, and the association does not employ or retain any attorneys. Through the organization, Heffington assists people in lawsuits. John had the Association for Honest Attorneys prepare a lawsuit for him in federal district court against Doering and other defendants. It is unclear from the record how this case concluded.

The trial court awarded Linda an equalization judgment of slightly more than $7 million. Both John and Mitchell appealed. Mark Sevart represented Mitchell and the business plaintiffs, but not John, on appeal. Mitchell and the business plaintiffs filed their notice of appeal on May 1, 2008. Both John and Mitchell raised a number of challenges to the trial court's decision, including whether Mitchell had a right to a jury trial on his claims. John alone argued that the trial court erred by denying John and Mitchell's motions to disqualify Doering as Linda's attorney.

In July 2009, while the direct appeal of the Sigg Divorce was pending in the Court of Appeals, Sevart filed *Sigg v. Doering* in the district court on behalf of Mitchell, John, and the business plaintiffs. *Sigg v. Doering* alleged breach of fiduciary duty by Doering. The trial court stayed proceedings in *Sigg v. Doering* while the Sigg Divorce was pending before the Court of Appeals.

On September 10, 2010, the Court of Appeals affirmed the trial court's decision in the Sigg Divorce. *In re Marriage of Sigg*, No. 100,522, 2010 WL 3636268, at *19 (Kan. App. 2010) (unpublished opinion). The Court of Appeals found that the trial court did not err by declining to disqualify Doering for a conflict of interest. 2010 WL 3636268, at *18.

3

Sevart filed a petition for review to our Kansas Supreme Court. The petition did not raise the conflict of interest issue because Mitchell had not raised it before the Court of Appeals. The *Sigg v. Doering* action remained stayed while the petition was pending. The petition was denied on May 16, 2011. See *In re Marriage of Sigg*, 2010 WL 3636268.

In mid-August 2011, Sevart filed a petition for writ of certiorari to the United States Supreme Court. The *Sigg v. Doering* action remained stayed while the petition was pending.

Next, on August 22, 2011, Mitchell fired Sevart from both the Sigg Divorce appeal and *Sigg v. Doering*. Mitchell requested that Sevart turn over the case files to Guy Heffington from the Association for Honest Attorneys. Sevart complied. On August 30, 2011, the trial court granted Sevart permission to withdraw from *Sigg v. Doering*. On September 6, 2011, after firing Sevart, Mitchell mailed Sevart a letter requesting an accounting of "all of the time you have spent and the hourly charges incurred while representing me, my business entities, and/or my father John, and his business entities in my parents' divorce case." Sevart did not respond. When Plaintiffs' counsel again later raised this issue, Sevart responded that he was retained on a yearly basis to handle all of the Siggs' legal issues, and provided examples of several of these issues: bankruptcy proceedings, criminal and contempt proceedings, and land deals.

The Association for Honest Attorneys assisted Mitchell in filing a lawsuit against Sevart, as well as a district court judge, three other attorneys, and a law firm on November 14, 2011. The Association for Honest Attorneys prepared the complaint that Mitchell filed pro se. Mitchell filed on behalf of himself and the business plaintiffs. According to John, the Association for Honest Attorneys suggested the November 2011 suit. In an affidavit accompanying the petition, Mitchell alleged that "[t]he lawyers and judges knew we [Mitchell and John] were millionaires and set up a theft ring to steal

4

money and property from me and my father using the court system." In his complaint, Mitchell references the prior case John filed in federal court in 2006 with the help of the Association for Honest Attorneys.

On November 28, 2011, the United States Supreme Court denied Plaintiffs' petition for writ of certiorari in the Sigg Divorce. *Sigg v. Sigg*, 565 U.S. 1059, 132 S. Ct. 759, 181 L. Ed. 2d 483 (2011).

In December 2011, Doering filed a motion for summary judgment in *Sigg v. Doering*. Mitchell went to Joan Heffington of the Association for Honest Attorneys. Heffington drafted Mitchell's response to Doering's motion for summary judgment. Mitchell's response (drafted by Heffington) was filed pro se on December 19, 2011. Mitchell did not seek counsel for the business plaintiffs; the business plaintiffs apparently did not respond to the summary judgment motion.

In March 2012, the trial court dismissed *Sigg v. Doering*, finding that the issue of Doering's alleged conflict of interest was fully litigated in the Sigg Divorce. Also in March 2012, the federal district court dismissed Mitchell's November 2011 action because the federal district court lacked jurisdiction over the parties and claims.

In June 2013, Mitchell, John, and the business plaintiffs filed this suit against Mark Sevart alleging legal malpractice. Plaintiffs twice moved to disqualify Daniel Church as Sevart's attorney in this case, alleging conflict of interest. The trial court denied both motions.

Both Plaintiffs and Sevart moved for summary judgment in this case. The trial court denied both motions. This case proceeded to a jury trial in late March 2017. The trial lasted six days. John, Mitchell, and Sevart all testified. Both Plaintiffs and Sevart introduced expert testimony and numerous exhibits; most of these exhibits are not in the

5

record on appeal. After Plaintiffs rested, Sevart filed a motion for judgment as a matter of law (JAMOL); Sevart also moved to dismiss John as a plaintiff as Plaintiffs had not shown that John sustained any damages. The trial court denied Sevart's motion for JAMOL but granted his motion to dismiss John as a plaintiff. Plaintiffs never filed for JAMOL.

At some point on March 30, 2017, the fourth day of trial, one of the jurors complained to Allen County Clerk Dina Morrison that a spectator had been trying to trip jurors as they entered and exited the courtroom during breaks in the trial. Morrison informed the trial court judge of the complaint. The judge then told counsel for both parties about the complaint, stating he did not know if it was true, but advised the parties to nevertheless speak with their respective courtroom spectators about the issue. The trial continued.

The jury in this case reached its verdict on April 1, 2017. The jury found Plaintiffs and Sevart to be 50% at fault; this precluded Plaintiffs from recovering from Sevart.

On April 3, 2017, Plaintiffs' counsel wrote to Morrison, asking her to preserve the security footage from the days of the trial and provide a copy to Plaintiffs' counsel. On April 6, 2017, Morrison responded to Plaintiffs' counsel's letter, treating the request as a Kansas Open Records Act (KORA) request and informing Plaintiffs' counsel that she had "begun the process of determining if we possess any public records meeting the terms of your request that are subject to disclosure." The trial court accepted the jury's verdict and journalized it on April 6, 2017, as well.

On April 13, 2017, Morrison sent Plaintiffs' counsel notice via letter that she denied access to the videos on the basis of two KORA provisions. Morrison's letter concluded that releasing the security footage would "reveal information about the court's

6

security procedures that could jeopardize the security of the building, as well as the persons who work and serve within it."

On April 28, 2017, Plaintiffs' counsel e-mailed Morrison, asking her to release the name of the juror who complained about the spectator's conduct. Morrison also treated this request as a KORA request. Morrison sent a letter on May 3, 2017, denying the request because the Allen County District Court "[did] not have public records that meet [the] request."

On May 4, 2017, Plaintiffs filed a motion to compel Morrison to release courtroom security footage from the trial and the identity of the complaining juror. Sevart filed a response to the motion, arguing that the motion should be denied. Morrison also filed a response as a nonparty opposing the motion to compel.

Also on May 4, 2017, Plaintiffs filed a motion for a new trial. Plaintiffs alleged they were entitled to a new trial on multiple grounds. The first ground Plaintiffs cited was alleged juror misconduct, citing the tripping allegations. Plaintiffs also cited an alleged conflict of interest arising from Mark Sevart's representation by Daniel Church. Finally, Plaintiffs argued that the verdict was contrary to the evidence. Plaintiffs filed a motion to amend or alter the judgment on May 4, 2017, as well. In it, Plaintiffs again alleged that the judgment was inconsistent with the evidence.

On November 8, 2017, Plaintiffs filed a notice of appeal in the trial court, appealing "from this judgment or order, Journal Entry dated April 6, 2017, accepting the jury's verdict and entering judgment in favor of defendant and against plaintiffs."

On November 14, 2017, the trial court entered a journal entry denying Plaintiffs' motions for a new trial, to alter or amend the judgment, and to compel release of the video footage and identity of the complaining juror.

7

*Are Plaintiffs Entitled to Judgment as a Matter of Law on Their Legal Malpractice Claim Against Sevart?*

### *Failure to Preserve*

Plaintiffs first argue that they were entitled to JAMOL. As an initial matter, nothing in Plaintiffs' briefs indicates they ever moved for JAMOL. Sevart points out this deficiency on appeal. Sevart also claims that this court should reject Plaintiffs' judgment as a matter of law argument on appeal because Plaintiffs failed to provide a citation in the record indicating which conclusions of law they contend were erroneous. In their response, Plaintiffs argue that they did provide such a pinpoint citation at page 4 of their brief:  "'Plaintiffs timely filed a motion for summary judgment and a memorandum in support of the motion for summary judgment prior to trial, which motion was denied by the trial court. (V. 1, ppg. 290-02; ppg. 259-289; V. 3, ppg. 119-126' (Appellants' Brief, pg. 4)."

Plaintiffs argue that the denial of their summary judgment motion properly preserved their argument that they were entitled to JAMOL for review by this court on appeal, despite the later jury trial and jury verdict. Plaintiffs cite K.S.A. 2018 Supp. 60-2102(a)(4); the relevant portion reads:

> "[T]he appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from:
>
> . . . .
>
> (4) A final decision in any action, except in an action where a direct appeal to the supreme court is required by law. In any appeal or cross appeal from a final decision, any act or ruling from the beginning of the proceedings shall be reviewable."

8

Sevart, however, cites to *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 350 P.3d 1091 (2015). There, in a suit by the insured (Evergreen) against its insurer (Lumbermens), one issue raised among many on appeal was the trial court's decision to deny Lumbermens' motion for summary judgment on its claim that Evergreen failed to provide Lumbermens with prompt notice of loss. Following the denial of summary judgment below, the parties proceeded to a trial and jury verdict on the issue of prompt notice of loss. On appeal, Lumbermens argued that it was error for the trial court to deny summary judgment. Evergreen argued that "appeal of the denial of a motion for summary judgment is not procedurally sound after the court has held a full jury trial on the merits of that issue." 51 Kan. App. 2d at 490.

In agreeing with Evergreen, this court was guided in its inquiry by the United States Supreme Court decision in *Ortiz v. Jordan*, 562 U.S. 180, 183-84, 131 S. Ct. 884, 178 L. Ed. 2d 703 (2011). There the Court was tasked with answering the following question:

> "May a party . . . appeal an order denying summary judgment after a full trial on the merits? Our answer is no. The order retains its interlocutory character as simply a step along the route to final judgment. [Citation omitted.] Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion."

As a result, Plaintiffs' argument that they properly preserved for review their argument that they were entitled to JAMOL based on the trial court's denial of their summary judgment motion stands in stark contrast to the *Ortiz* holding. Thus, Plaintiffs' argument is not warranted by the law.

En route to its holding, the *Evergreen* court stated the following: "A party who has lost on summary judgment may preserve legal issues or defenses for appeal by incorporating them into a trial motion for judgment as a matter of law. See K.S.A. 2013

9

Supp. 60-250(a)(1); K.S.A. 2013 Supp. 60-252(c)." 51 Kan. App. 2d at 490. The *Evergreen* court noted that although Lumbermens did move for judgment as a matter of law at the close of Evergreen's evidence, the trial court denied this motion, ruling that Evergreen had presented sufficient evidence on the issue in question to avoid the granting of a judgment as a matter of law. The *Evergreen* court further noted that "[p]rocedurally, if Lumbermens wanted to challenge this issue, it should have appealed the district court's ruling on the motion for judgment as a matter of law." 51 Kan. App. 2d at 490. Thus, the *Evergreen* court declined to examine the earlier summary judgment decision once the issue had been submitted to the jury. 51 Kan. App. 2d at 490.

Here, unlike *Evergreen*, Plaintiffs have failed to move for judgment as a matter of law. In adopting the well-reasoned holding of the *Evergreen* court, we decline to revisit the trial court's denial of summary judgment in this matter. As a result, Plaintiffs' argument fails.

Nevertheless, assuming arguendo that if we wanted to depart from the *Evergreen* holding and review the trial court's summary judgment ruling below, we would be prevented from doing so because Plaintiffs have failed to designate an adequate record showing error below.

Kansas Supreme Court Rule 6.02(a)(4) (2019 Kan. S. Ct. R. 35) requires appellants to include in their briefs "[a] concise but complete statement, without argument, of the facts that are material to determining the issues to be decided in the appeal. The facts included in the statement must be keyed to the record on appeal by volume and page number." Moreover, "[t]he court may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal." Rule 6.02(a)(4) (2019 Kan. S. Ct. R. 35). Thus, appellants who fail to comply with this rule can lead to an inference that there is no support in the record for their naked assertion.

Summary judgment requires a showing that the "pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact." K.S.A. 2018 Supp. 60-256(c)(2). To properly rule on a motion for summary judgment, then, the trial court must determine if the evidence properly before the court shows a disputed material fact. Appellate courts conduct de novo review, applying the same standard as the trial court when reviewing decisions on motions for summary judgment. *Central Kansas Medical Center v. Hatesohl*, 308 Kan. 992, 1001-02, 425 P.3d 1253 (2018). Applying Rule 6.02(a)(4), then, Sevart's motion opposing summary judgment, his statement of controverted facts, and his own list of uncontroverted facts accompanying his motion for summary judgment, would be "facts . . . material to determining" if summary judgment was legally appropriate. By failing to include any mention of the relevant documents filed by Sevart below, Plaintiffs have foreclosed this court from applying the appropriate standard of review in this appeal.

Because Plaintiffs have not provided citations on appeal to any motions, affidavits, or evidence furnished into the record below by Sevart, Plaintiffs have failed to provide this court with "the facts that are material to determining the issues to be decided in the appeal," in violation of Rule 6.02(a)(4). Our Supreme Court has declined to address appellants' arguments when those appellants fail to "develop the record below or, at least, cite to the record." *State v. Reed*, 300 Kan. 494, 513, 332 P.3d 172 (2014). Further, "[w]hen a litigant fails to adequately brief an issue it is deemed abandoned." *State v. Williams*, 298 Kan. 1075, 1083, 319 P.3d 528 (2014). Finally, an appellant "has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, an appellate court presumes that the action of the trial court was proper." *State v. Moncla*, 262 Kan. 58, 68, 936 P.2d 727 (1997).

11

Simply put, it would be all too easy for parties to appeal a summary judgment motion and to present only their side on appeal with no mention in their brief concerning the opposing parties' side of the case. This is inappropriate, as it prohibits this court from engaging in appropriate review of the trial court's decisions. We

"'[j]udges are not like pigs hunting for truffles buried in briefs.' *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Nor are they archaeologists searching for treasure. *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999). It is not the court's responsibility to search through records to determine whether there is sufficient evidence to support a party's claim. *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). That responsibility falls to the advocates "to make it easy for the court to rule in [their] client's favor.' *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006)." *Sheldon v. Khanal*, No. 110,222, 2014 WL 3732012 at *4 (Kan. App. 2014) (unpublished opinion).

*Was There Sufficient Evidence to Support the Jury's Finding of Comparative Negligence?*

Plaintiffs next argue that Sevart failed to admit sufficient evidence to support the jury's finding that Plaintiffs were 50% at fault. The jury here found that both Plaintiffs and Sevart were at fault, and that Plaintiffs bore 50% of the fault and Sevart bore 50% of the fault. This verdict prevented Plaintiffs from recovering damages from Sevart.

"When a litigant claims the factual findings of a judge or jury are based on insufficient evidence, 'this court's power begins and ends with a determination of whether there is evidence to support those findings. If the evidence supports the jury's findings, this court will not disturb them on appeal. It is of no consequence that contrary evidence might have supported different findings.' *Unruh v. Purina Mills*, 289 Kan. 1185, 1196, 221 P.3d 1130 (2009)." *Wells Fargo Vendor Financial Srvs. v. Nationwide Learning*, 56 Kan. App. 2d 259, 271, 429 P.3d 221 (2018).

Plaintiffs concede that Sevart admitted evidence about Plaintiffs' actions after *Sigg v. Doering* was filed. One example of this is evidence about Mitchell firing Sevart before

12

the United States Supreme Court denied Plaintiffs' petition for a writ of certiorari. Plaintiffs, however, state that "[n]o evidence was presented regarding any action(s) on behalf of any of the Plaintiffs prior to the filing of *Sigg v. Doering* upon which a finding of fault or negligence establishing comparative fault could be attributed to Plaintiffs." Plaintiffs argue that their claim against Sevart was based on the *Sigg v. Doering* petition's lack of probable cause or merit when it was filed, and any negligence on the part of Plaintiffs was irrelevant. Essentially, Plaintiffs argue that any evidence about their actions after the case was filed cannot be sufficient evidence of comparative fault on their part.

Below, Plaintiffs made a similar argument during the jury instruction conference. The trial court judge agreed with Sevart that what happened after the case was filed was indeed relevant to comparative fault. Sevart cites to the exchange in his brief. The relevant exchange during the jury instruction conference is as follows:

> "THE COURT: And the next number I'm looking at is the Honest Attorneys deal.
> "MR. CLARK [Plaintiffs' attorney]: On Roman Numeral III, under defendant Sevart's affirmative defenses, under subsection 1a, our claim is that it was improperly filed. So any negligence after that would be irrelevant.
> "THE COURT: Well, but their claim is that—
> "MR. CHURCH [Sevart's attorney]: We claim it was properly filed and, therefore, it is.
> "MR. CLARK: And if it was properly filed, then we don't have to compare or we don't have to address whether or not the motion for summary judgment was responded to because if it was properly filed, whatever happened after that I guess is fine.
> "THE COURT: Well—
> "MR. CHURCH: No. I mean, we claim that the lawsuit was properly filed and what happened after that is what is material.
> "THE COURT: Is what?
> "MR. CHURCH: We claim that the lawsuit obviously was properly filed and what happened after that is material.

13

"THE COURT: That's an item of fault that they—that they allege against the plaintiffs. There has been evidence to the effect that—from the defendant's experts anyway, that the case should have been filed in opposition to preserve a statute of limitations just in case the Court of Appeals came down with a different verdict, or came down with a different judgment that there was a breach of fiduciary duty."

"So they are saying that that—if they kept that open—

"MR. CLARK: That's fine.

"THE COURT: Okay. Anything else on that one?

"MR. CLARK: Not on that page."

Plaintiffs' counsel implicitly conceded the court's reasoning on this issue by stating "[T]hat's fine." Thus, Plaintiffs waived their comparative fault argument.

The jury heard testimony that Mitchell fired Sevart and thus precluded Sevart from arguing the summary judgment motion. The jury heard testimony that Mitchell opted not to find a new attorney, but instead went to a nonlawyer, Joan Heffington, of the Association for Honest Attorneys. The jury heard testimony from David Brake that Sevart's arguments about the statute of limitations and collateral estoppel had a chance at surviving summary judgment. The jury heard testimony that Mitchell's pro se response did not address Doering's substantive arguments and, in fact, asked for the case to be dismissed. The jury heard testimony that Mitchell declined to use an expert report from Russell Mills to counter the summary judgment motion, even though the report had already been produced and paid for. The jury also heard testimony that Mitchell failed to seek representation for the business plaintiffs in the *Sigg v. Doering* matter after firing Sevart and that the business plaintiffs did not respond to Doering's motion for summary judgment.

We note that the jury could have concluded from this evidence that Mitchell effectively sunk his own case, earning a summary judgment decision that became the "law of the case." The jury could have reasonably concluded that Mitchell's actions

14

constituted comparative fault because Mitchell's actions earned the March 2012 summary judgment decision that Mitchell then turned around and used to claim that Sevart was negligent back in 2009. Accordingly, having identified evidence to support the jury's finding of comparative fault, we reject Plaintiffs' sufficiency of the evidence claims.

*Did the Trial Court Err by Denying Plaintiffs' Motion to Compel the Release of Courtroom Video?*

Plaintiffs' third argument on appeal is that the trial court erred by denying their motion to compel release of courtroom security footage from one of the days of trial.

Neither Plaintiffs, Sevart, nor Morrison provide a citation in the record to the court proceedings regarding the juror's complaint at issue here, nor the conversation between the trial court judge and counsel regarding the complaint. Independent review of record volume IX, the transcript from the fourth day of trial, does not reveal anything relevant. The Plaintiffs and Morrison, do, however, provide citations to the posttrial correspondence and motions regarding the issue.

At some point on March 30, 2017, the fourth day of trial, one of the jurors complained to Morrison that a spectator had been trying to trip jurors as they entered and exited the courtroom during breaks in the trial. Morrison informed the trial court judge of the complaint. The judge then told counsel for both parties about the complaint, stating he did not know if it was true, but advising the parties to nevertheless speak with their respective courtroom spectators about the issue. These facts are taken from Morrison's motion opposing Plaintiffs' motion to compel release of the footage and the juror's identity. The motion contains no citations but it appears that Plaintiffs, Sevart, and Morrison would agree on these facts.

15

In Plaintiffs' brief, they claim that "the only spectator's [*sic*] generally present in the courtroom throughout most of the trial, and specifically at the time the complaint was made, were members of the Plaintiffs' family, and an employee of a family member's business, all of whom were seated directly behind Plaintiffs' counsel." They provide no citation to the record to support this claim, but did make the same claim in their motion to compel release of the video footage and the juror's identity. Plaintiffs also claim for the first time on appeal that Plaintiffs' counsel attempted to get the trial court judge to discuss the incident beyond advising both parties' counsel to speak to their spectators. Plaintiffs also provide no cite to the record in support of this claim.

The jury in this case reached its verdict on April 1, 2017. On April 3, 2017, Plaintiffs' counsel wrote to the trial court clerk, Dina Morrison, asking her to preserve the security footage from the days of the trial and provide a copy to Plaintiffs' counsel. On April 6, 2017, Morrison responded to Plaintiffs' counsel's letter, treating the request as a KORA request and informing Plaintiffs' counsel that she had "begun the process of determining if we possess any public records meeting the terms of your request that are subject to disclosure." The trial court accepted the jury's verdict and journalized it on April 6, 2017, as well.

On April 13, 2017, Morrison sent Plaintiffs' counsel notice via letter that she denied access to the videos on the basis of two KORA provisions: K.S.A. 2018 Supp. 45-221(a)(12) and K.S.A. 2018 Supp. 45-221(a)(45). K.S.A. 2018 Supp. 45-221(a)(12) states that public agencies are not required to disclose:

> "Records of emergency or security information or procedures of a public agency, or plans, drawings, specifications or related information for any building or facility which is used for purposes requiring security measures in or around the building or facility or which is used for the generation or transmission of power, water, fuels or communications, if disclosure would jeopardize security of the public agency, building or facility."

16

K.S.A. 2018 Supp. 45-221(a)(45) states that public agencies are not required to disclose:

"Records, other than criminal investigation records, the disclosure of which would pose a substantial likelihood of revealing security measures that protect: (A) Systems, facilities or equipment used in the production, transmission or distribution of energy, water or communications services; (B) transportation and sewer or wastewater treatment systems, facilities or equipment; or (C) private property or persons, if the records are submitted to the agency. For purposes of this paragraph, security means measures that protect against criminal acts intended to intimidate or coerce the civilian population, influence government policy by intimidation or coercion or to affect the operation of government by disruption of public services, mass destruction, assassination or kidnapping. Security measures include, but are not limited to, intelligence information, tactical plans, resource deployment and vulnerability assessments."

Morrison's letter concluded that releasing the security footage would "reveal information about the court's security procedures that could jeopardize the security of the building, as well as the persons who work and serve within it."

On April 28, 2017, Plaintiffs' counsel e-mailed Morrison, asking her to release the name of the juror who complained about the spectator's conduct. Morrison also treated this request as a KORA request. Morrison sent a letter on May 3, 2017, denying the request because the Allen County District Court "[did] not have public records that meet [the] request."

On May 4, 2017, Plaintiffs moved to compel Morrison to release courtroom security footage from the trial and the identity of the complaining juror. Sevart filed a response to the motion, arguing that the motion should be denied. Morrison also filed a response as a nonparty, opposing the motion to compel.

On November 8, 2017, Plaintiffs filed a notice of appeal in the trial court, appealing "from this judgment or order, Journal Entry dated April 6, 2017, accepting the jury's verdict and entering judgment in favor of defendant and against plaintiffs."

On November 14, 2017, the trial court entered a journal entry denying Plaintiffs' motions for a new trial, to alter or amend the judgment, and to compel release of the video footage and identity of the complaining juror. We could not find anything in the record indicating that the trial court announced its ruling on these motions from the bench before November 14, 2017. Nothing in the clerk's system indicates that Plaintiffs have filed any amended notice of appeal.

In their brief, Plaintiffs argue that the trial court erred by denying their motion to compel release of the video footage. Plaintiffs address only the trial court's refusal to release the video footage, not the identity of the complaining juror. Plaintiffs argue that KORA did not apply to their request. Plaintiffs' main argument on appeal is that the trial court erred because

> "[w]hile such inquiry may or may not reveal additional information which would constitute juror misconduct sufficient to support the granting of a new trial, the denial of Plaintiffs' request and subsequent motion for the copy of the video recording of the relevant portion of the trial effectively prohibited an investigation by Plaintiffs' counsel into the matter, violated the Plaintiffs' rights to due process and their substantial rights to a fair trial, and prohibited the proper preservation and presentation of the issue for purposes of appeal."

Plaintiffs also incorrectly claim that they "have not requested a new trial on grounds of juror misconduct at this time." We found no support in the record for this claim. Plaintiffs listed "juror misconduct" as the first reason they deserved a new trial in their motion for a new trial filed on May 4, 2017. Plaintiffs identified the very same issue

18

(the complaint about a spectator attempting to trip jurors) as the juror misconduct necessitating a new trial. Plaintiffs argued:

> "[t]he juror's false accusation regarding the conduct of a family member or employee of Plaintiffs' family during the course of the trial evidences prejudice by the juror against Plaintiffs, constitutes a violation of [the jurors'] oath, and amounts to juror misconduct pursuant to [K.S.A.] 60-259(a)(1)(A). This misconduct by the juror substantially prejudiced the Plaintiffs' rights in this matter to a fair trial."

The trial court denied the Plaintiffs' motion for a new trial on November 14, 2017.

Morrison filed a brief in this appeal as a nonparty appellee, addressing only the motion to compel release of video footage issue. Morrison addresses the merits of Plaintiffs' argument but first points out a fatal jurisdictional issue.

As the timeline above indicates, the journal entry accepting the jury's verdict was entered on April 6, 2017. That journal entry reflects only that the jury returned a verdict assigning 50% fault each to Sevart and Plaintiffs, the trial court accepted the verdict, and the trial court entered judgment in favor of Sevart. Plaintiffs did not file their motion to compel release of the video until May 4, 2017. Plaintiffs filed their notice of appeal on November 8, 2017. The notice of appeal states only that Plaintiffs appeal "from this judgment or order, Journal Entry dated April 6, 2017, accepting the jury's verdict and entering judgment in favor of defendant and against plaintiffs." The trial court did not deny Plaintiffs' motion to compel until November 14, 2017.

"[J]urisdictional questions are questions of law subject to unlimited appellate review." *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637, 270 P.3d 1074 (2011). Additionally, "[i]t is a fundamental proposition of Kansas appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal." *Hess v. St. Francis Regional Med. Center*, 254 Kan.

19

715, 718, 869 P.2d 598 (1994). Here, Plaintiffs' notice of appeal identified only "this judgment or order, Journal Entry dated April 6, 2017, accepting the jury's verdict and entering judgment in favor of defendant and against plaintiffs." Plaintiffs did not identify the trial court's decision on their motion to compel as one of the rulings they sought to appeal. Plaintiffs identified only the April 6th Journal Entry as the ruling they sought to appeal. The April 6th Journal Entry does not deal with video footage or Plaintiffs' motion to compel in any way.

Plaintiffs also filed their notice of appeal on November 8, 2017, while the trial court did not rule on Plaintiffs' motion to compel until November 14, 2017. Plaintiffs' notice of appeal was therefore premature with respect to the trial court's ruling on the motion to compel. Supreme Court Rule 2.03 (2019 Kan. S. Ct. R. 14) governs the effectiveness of premature notices of appeal. It states:

> "(a)     When a Premature Notice of Appeal is Effective. A notice of appeal that complies with K.S.A. 60-2103(b)—filed after a judge of the district court announces a judgment to be entered, but before the actual entry of judgment—is effective as notice of appeal under K.S.A. 60-2103 if it identifies the judgment or part of the judgment from which the appeal is taken with sufficient certainty to inform all parties of the rulings to be reviewed on appeal.
>
> "(b)     Timing of a Notice of Appeal Challenging Certain Posttrial Motions. A party intending to challenge an order disposing of any of the following motions, or a judgment's alteration or amendment upon such a motion, must file a notice of appeal—in compliance with these rules—not later than 30 days after the entry of the order disposing of the last such remaining motion:
>
> (1)     for judgment under K.S.A. 60-250(b);
> (2)     to amend or make additional factual findings under K.S.A. 60-252(b), whether or not granting the motion would alter the judgment;
> (3)     to alter or amend the judgment under K.S.A. 60-259;
> (4)     or a new trial under K.S.A. 60-259; or

(5)      for relief under K.S.A. 60-260 if the motion is filed no later than 28 days after the judgment is entered."

Plaintiffs' notice of appeal does not qualify as a valid premature notice of appeal with respect to the trial court's ruling on their motion to compel under either Rule 2.03(a) or (b). Plaintiffs' notice of appeal does not "identif[y] the judgment or part of the judgment from which the appeal is taken" with respect to the motion to compel. Plaintiffs' motion to compel also does not fall under any of the five categories identified in 2.03(b).

Plaintiffs' notice of appeal does not identify the trial court's ruling on their motion to compel as a ruling to be appealed. The notice of appeal also predated the trial court's ruling on their motion to compel but does not qualify as a valid premature notice of appeal. This court therefore lacks jurisdiction over Plaintiffs' attempted appeal of the trial court's ruling on their motion to compel and cannot reach this issue on the merits.

Finally, as Sevart points out in his brief, Plaintiffs' arguments hinge on two levels of speculation. First, Plaintiffs point out that the juror's allegation was potentially false. Second, they conclude this potentially false allegation evinces potential prejudice by the juror against the Plaintiffs. Additionally, nothing prohibited Plaintiffs from asking jurors after the trial (a) if a spectator had tried to trip them personally, (b) if they had witnessed a spectator try to trip another juror, or (c) if another juror had mentioned a spectator trying to trip jurors. Indeed, Plaintiffs state in their brief that they interviewed three jurors, "each of whom declined to comment on any specific matter involving their roles as jurors." The trial court here did not prevent Plaintiffs from meeting their burden of showing juror misconduct—the Plaintiffs were free to interview all of the jurors, not just three. See *Williams v. Lawton*, 288 Kan. 768, 794-95, 207 P.3d 1027 (2009) ("Under Supreme Court Rule 169, attorneys may discuss a trial with willing jurors after their discharge from jury duty and may do so without seeking permission from the district judge unless contrary orders have been given."). As a result, Plaintiffs' argument fails.

21

*Did the Trial Court Abuse Its Discretion by Refusing to Disqualify Sevart's Attorney?*

Finally, Plaintiffs argue that the trial court committed reversible error by denying their motions to disqualify Daniel Church as Sevart's counsel. Appellate courts apply abuse of discretion review to trial courts' rulings on motions to disqualify attorneys. *State v. Miller*, 308 Kan. 1119, 1148, 427 P.3d 907 (2018). A trial court abuses its discretion if it bases its decision on an error of fact or law, or if no reasonable person would agree with the court's decision. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Church works at Morrow Willnauer Church, L.L.C. According to Plaintiffs, Gary Willnauer works at the same firm. Plaintiffs allege that Willnauer represented Mitchell Sigg, Sigg Motors, LLC, Nations Lease & Remarketing, LLC, and Nations Financial, LLC, at some point in the Sigg Divorce. Plaintiffs state that in this context, Willnauer argued a motion to disqualify attorney Steven Doering as Linda Sigg's attorney in the Sigg Divorce. Thus, Plaintiffs argue, Church's representation of Sevart constitutes a conflict of interest necessitating Church's disqualification.

In the case at bar, Plaintiffs moved twice to disqualify Church and Morrow Willnauer Church, L.L.C. Plaintiffs fail to cite to the trial court's decisions on these motions or provide citations for Sevart's opposition to the motions. Sevart, in his brief, provides a citation to the minutes report of the trial court's denial of Plaintiffs' first motion. This does not explain the rationale for the trial court's decision but states "Def's motion to disqualify Church/Goodwin's firm as Def's attorneys. Deny motion." Much like above, Plaintiffs' failure to provide citations to Sevart's responses to their motions and the trial court's rulings on said motions precludes this court from appropriately conducting abuse of discretion review.

As above, Plaintiffs failed to provide this court with "the facts that are material to determining the issues to be decided in the appeal," in violation of Rule 6.02(a)(4). Our Supreme Court has declined to address appellants' arguments when those appellants fail to "develop the record below or, at least, cite to the record." *Reed*, 300 Kan. at 513. Further, "[w]hen a litigant fails to adequately brief an issue it is deemed abandoned." *Williams*, 298 Kan. at 1083. Finally, an appellant "has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, an appellate court presumes that the action of the trial court was proper." *Moncla*, 262 Kan. at 68.

Nevertheless, for the sake of argument, we will consider this issue despite Plaintiffs' deficient briefing. The heart of Plaintiffs' argument is that Church's representation of Sevart in the case at bar was a conflict of interest because Willnauer had represented some of the Plaintiffs here at some point in the years-long Sigg Divorce. Plaintiffs provide no authority establishing that such a situation constitutes a conflict of interest.

Plaintiffs cite Kansas Rule of Professional Conduct 1.9 (2019 Kan. S. Ct. R. 321). They claim the rule "prohibits an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing." This is inapplicable to the situation at hand. Willnauer and Church are different people. In fact, KRPC 1.9 discusses situations like the one at hand, involving two different members of the same firm. The relevant portions of KRPC 1.9(c) state:

> "(c) A lawyer who has formerly represented a client in a matter or whose present or
> former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client." 2019 Kan. S. Ct. R. 321.

Plaintiffs here do not allege that Church used or revealed information related to Willnauer's previous representation of some of the Plaintiffs in the Sigg Divorce. Rather, Plaintiffs' main contention is that Church purportedly "argued on behalf of his current client, Mark Sevart, the opposite of what Mr. Willnauer previously argued on behalf of his clients, [Mitchell Sigg and the business plaintiffs]." Under comment 3 of KRPC 1.9, it states: "Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying." Moreover, the comment further states: "Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related."

Here, Plaintiffs have failed to provide any authority suggesting that the issue at hand—the representation of Plaintiffs by Willnauer years earlier and the representation of Sevart by Church in this case—constitutes a conflict of interest.

Plaintiffs have not established that the trial court committed an error of law or fact, or acted unreasonably. Accordingly, we conclude that the trial court's refusal to disqualify Church as Sevart's attorney was not an abuse of discretion.

Affirmed.

24